**Clayton TAYLOR, Appellant,**

v.

**B. O. BURK, Appellee.**

No. 07–86–0070–CV.

Court of Appeals of Texas, Amarillo.

Dec. 19, 1986.

Rehearing Denied Jan. 5, 1987.

Billy J. Robinson (Curry, Curry & Robinson, P.C.), Lubbock, for appellant.

George L. Thompson (Thompson & Thomas, P.C.), Lubbock, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

DODSON, Justice.

Clayton Taylor brought this action against B.O. Burk under the Texas Deceptive Trade Practice-Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.41, *et seq.* (Vernon Pamph.Supp.1986), (hereinafter "DTPA"), to recover damages to a house that he (Taylor) purchased from Ellis and Tresa Miller (Taylor's daughter and son-in-law). The case was tried before a jury on five special issues. After the jury's verdict, Taylor moved for judgment on the jury's verdict and Burk moved for judgment notwithstanding the jury's verdict. The trial court granted Burk's motion and rendered a judgment notwithstanding the verdict against Taylor. Taylor appeals from the judgment and brings one point of error. By his point of error, Taylor claims the trial court erred in overruling his motion for judgment and by granting Burk's motion for judgment notwithstanding the verdict because the evidence amply raised fact questions for the jury under the DTPA. We affirm.

The evidence shows the house in question was constructed before March of 1978 by Bradley Burk. He built the house for his mother and father (B.O. Burk). B.O. Burk sold the house to the Millers in December of 1978. In July of 1979, the Millers sold the house to Taylor. When the Millers looked at the house, Brad Burk, B.O. Burk, and B.O.'s wife were present. The Millers testified that the Burks answered all of their questions about the house. The evidence shows that when the Millers asked a question about the house either Brad or B.O. Burk would respond to the question. The tenor of the Millers' testimony was that either Brad or B.O., or both, represented that the house was a well-constructed, good house. B.O. Burk had worked on the house when it was built.

In July of 1979, when Taylor purchased the house from the Millers, he knew that during the time the Millers lived in the house they had had trouble with the heating and air conditioning system, the fireplace, and other minor matters. While the Millers owned the house, they enclosed the garage and added about 400 square feet to the heating and cooling system. Taylor had been in the house on several occasions when the Millers owned it.

When Taylor bought the house from the Millers, he talked only to the Millers about the house. He had no conversation with B.O. Burk nor did he talk to Brad Burk. All of the information he received about the house came from the Millers. Mr. Miller's testimony showed that the information they told Taylor came from their own personal knowledge and information furnished by the Burks. Their testimony does not show the specific information about the house which was received from the Burks and which was told to Taylor. Likewise,

their testimony does not specifically show what information they received from B.O. Burk which was told to Taylor.

In response to the first special issue, the jury found that B.O. Burk knowingly represented to only *Ellis and Tresa Miller* that the house was constructed in a good and workmanlike manner, the air conditioning unit was in proper working order, the fireplace was constructed in a good and workmanlike manner, the water heater was in proper working order, the sewer lines were suitable for their intended use, and the plumbing beneath the kitchen was installed properly. In response to the second special issue, the jury found that the representations were false. In response to the third special issue, the jury further found that Taylor relied on the representations made by B.O. Burk when Taylor purchased the house from the Millers. However, it is undisputed that when Taylor purchased the house from the Millers, he did not talk to Burk, that B.O. Burk never made any representations to Taylor about the house, and that B.O. Burk talked only to the Millers at the time that they purchased the house.

To support his position that B.O. Burk is liable to him under the DTPA, Taylor relies on *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981). In *Cameron*, the Court determined "that a person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the DTPA" and that the purchasers of the house were entitled to bring an action against a real estate agent for a deceptive trade practice violation since they were consumers under the Act. 618 S.W.2d at 541.

The facts in *Cameron* showed that the plaintiffs sought to purchase a house through their own real estate agent. However, the house they ultimately decided to purchase was listed by another real estate agent (the defendant) in the Multiple Listing Service. In the MLS listing, the defendant real estate agent represented that the house (which the plaintiff sought to purchase) had 2,400 square feet. After the plaintiffs purchased the house and moved in, they had the house measured and determined that there was only 2,245 square feet (155 square feet less than represented by the defendant). The defendant real estate agent had a listing agreement with the seller of the house whereby the sellers were to pay the defendant real estate agent a 6% commission on the purchase price of the house. As a part of its normal business practice, the defendant real estate agent listed the house in the MLS.*

In *Cameron*, the defendant real estate agent defended against the plaintiff-purchasers' DTPA action on the grounds that they were not "consumers" under the Act, and that there was no privity of contract between he and the plaintiff-purchasers. En route to its determination, the Court stated:

> We find no indication in the definition of consumer in section 17.45(4), or any other provision of the Act, that the legislature intended to restrict its application only to deceptive trade practices committed by persons who furnish the goods or services on which the complaint is based. Nor do we find any indication that the legislature intended to restrict its application by any other similar privity requirement.

The Court further stated:

> The Act is designed *to protect consumers* from any deceptive trade practice *made in connection with the purchase* or lease of any goods or services (emphasis added). 618 S.W.2d at 540–41.

In *Cameron*, the defendant real estate agent's representation as to the square footage of the house was made "in connection with" the plaintiffs' purchase of the house. The defendant real estate agent was "connected with" the transaction since he was the seller's real estate agent, he placed the listing in MLS, and he made the erroneous representation as to the square footage of the house. In this instance,

---

* It is a matter of common knowledge that under the MLS arrangement, the listing agent and the selling agent share the real estate commission paid by the seller.

there is no evidence in the record to show that B.O. Burk was *connected with* the real estate transaction between Taylor and the Millers. It is undisputed, conclusively established, and admitted to by Taylor that B.O. Burk made no representations to him about the house. In fact, Taylor admitted that he never talked to B.O. Burk about the house when Taylor purchased it from the Millers.

Consequently, we must conclude that the trial court did not err by failing to grant Taylor's motion for judgment on the verdict. Nor did the trial court err by granting B.O. Burk's motion for judgment notwithstanding the jury's verdict. Taylor's point of error is overruled.

The judgment of the trial court is affirmed.