Lawrence C. MARSHALL, Appellant,

v.

M.F. KUSCH, Appellee.

No. 05–00–01791–CV.

Court of Appeals of Texas, Dallas.

Aug. 22, 2002.

Rehearing Overruled Sept. 30, 2002.

P. Michael Jung, Dallas, R. Andrew Black, Houston, Strasburger & Price, L.L.P., for appellant.

Luke Motley IV, Roger D. Sanders, Sanders O'Hanlon & Motley, P.L.L.C., Sherman, for appellee.

Before Justices MORRIS, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

M.F. Kusch sued Lawrence C. Marshall after Kusch discovered anthrax on property previously owned by Marshall. The jury found in favor of Kusch on his claims for fraud and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA). *See* Tex. Bus. & Com. Code Ann. §§ 17.41–17.63 (Vernon 2002). In four issues, Marshall challenges the legal and factual sufficiency of the evidence supporting the liability and damages awarded on these claims and contends that the trial court made erroneous evidentiary rulings and submitted an erroneous charge to the jury. Because we conclude there is no evidence supporting the verdict on the fraud issues and the DTPA does not apply to this case as a matter of law, we resolve Marshall's first issue in his favor. Consequently, we reverse the trial court's judgment and render judgment in favor of Marshall.

## FACTUAL AND PROCEDURAL HISTORY

In 1981, Marshall began acquiring acreage in south Texas near Uvalde. He eventually acquired 6828.20 acres at a price of $2,047,985.16. Marshall added numerous improvements, including a new hunting lodge, roads, game proof fencing, machine shops, deer feeders, and barns. Marshall spent $820,534.90 on the improvements. He also stocked the ranch with numerous species of exotic deer, sheep, and goats.

In 1987, there was an outbreak of anthrax on the ranch, killing some of the animals. In 1991, Marshall decided to sell the ranch. In the process of attempting to sell the ranch, he made representations that there was no anthrax on the ranch in the presence of Greg Tom, a real estate broker. In August 1996, Marshall sold the ranch to Gilmore–Barclay, Ltd., a real estate investment company, for $822,000 consisting of cash and a $616,500 fifteen-year nonrecourse note secured by a lien. Although Marshall testified for the first time at trial that he disclosed the anthrax to Douglas Barclay, a principal in Gilmore–Barclay, his previous deposition testimony and all the other witnesses indicated that Marshall made no disclosure of the previous anthrax outbreak to Gilmore–Barclay. In April 1997, Gilmore–Barclay sold the ranch to Kusch for $1,200,000, consisting of $298,049.62 cash and an assumption of the nonrecourse note. There was no dis-

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

cussion of anthrax between Gilmore–Barclay and Kusch in connection with Kusch's purchase of the property. The two brokers involved in that sale, Greg Tom and Maurice Chambers, discussed the fact that there was no anthrax on the property, but that information was not communicated to Kusch. In 1997, another anthrax outbreak killed many animals.

Kusch sued Marshall for fraud, deceptive trade practices, and conspiracy.[3] The case was tried to a jury, which found against Marshall on the fraud and DTPA issues. The judgment awarded Kusch $369,502 in actual damages, $3,000,000 in punitive damages, additional damages in the amount of $737,004, pre- and post-judgment interest, and attorney's fees. Marshall was credited with the settlement between Kusch and Gilmore–Barclay. Marshall appealed.

## LIABILITY

In Marshall's first issue, he contends there is legally and factually insufficient evidence to support a judgment against him for fraud and for DTPA violations and that the judgment on those claims is erroneous as a matter of law.

### Standard of Review

■ An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In conducting a no evidence review, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). If there is more than a scintilla of evidence to support the finding, we uphold the judgment. *Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.,* 65 S.W.3d 281, 284 (Tex. App.-Dallas 2001, pet. denied). In contrast, when we review a challenge to the factual sufficiency of the evidence, we consider all the evidence. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

■ Further, we review a trial court's determination of legal principles de novo. *Walker v. Packer* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding).

### Fraud based on Affirmative Misrepresentations

Marshall contends that any finding of fraud based on affirmative misrepresentations cannot be supported by the evidence legally or factually.[4] Marshall argues that

---

3. Kusch also sued Gilmore–Barclay and its general partner Terracotta Land Co., Inc. These parties settled before trial and are not parties to this appeal. Third-party claims filed against Greg Tom and Maurice Chambers were also settled and are not part of this appeal.

4. Part of Question No. 1 and its instruction concerned fraud based on affirmative misrepresentations as follows:

   Did [Marshall] commit fraud against Fred Kusch?

   . . . .

B) Fraud occurs when—
   a. a party makes a material misrepresentation;
   b. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion;
   c. the misrepresentation is made with the intention that it should be acted on by the other party; and
   d. the other party acts in reliance on the misrepresentation and thereby suffers injury.

there is no evidence of any affirmative misrepresentation to Kusch. Kusch responds that there is evidence to support the findings for affirmative misrepresentations. He maintains that Marshall's misrepresentation in Tom's presence, which Tom repeated to Chambers, caused the issue of anthrax not to be raised to Kusch. Thus, Kusch claims that Marshall's affirmative misrepresentations impacted Kusch's decision to purchase the property.

■■■ A fraud cause of action requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (4) which was relied upon, and (5) which caused injury. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam); *Sutton*, 65 S.W.3d at 285. A person who makes a misrepresentation is liable to the person or class of persons the maker intends or "has reason to expect" will act in reliance upon the misrepresentation. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex.2001) (citing RESTATEMENT (SECOND) OF TORTS § 531 (1977)). Thus, although a misrepresentation need not be directly communicated by the speaker to the relying party, a misrepresentation must reach the relying party and influence his conduct. *Id.* at 580, 581 (citing RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977)).

■■■ There is evidence in the record that Marshall told potential buyers of the property that there was no anthrax on the property and that he had made these representations in the presence of Tom, a real estate broker. There is even evidence that Tom communicated the misrepresentation to Chambers, a co-broker on the sale to Kusch. However, no affirmative misrepresentation was made to Kusch about anthrax on the property. Kusch testified that, during the purchase negotiations, he neither asked nor heard anything about anthrax. All involved in the sales transaction, including Tom and Chambers, testified that they did not discuss anthrax with Kusch. Marshall's alleged misrepresentation was not communicated to Kusch.

Kusch argues that the Texas Supreme Court's decision in *Ernst & Young* applies to Marshall's misrepresentations because the misrepresentations affected the transaction when no anthrax information was revealed. However, the supreme court dealt only with the communication of a misrepresentation to a third party. *See id.* at 578. Marshall would be liable to Kusch for fraud only if Kusch relied on a misrepresentation. *See id.* at 580, 581 (citing RESTATEMENT (SECOND) OF TORTS § 531 cmt. d (1977)). Because the misrepresentation was not communicated to Kusch, there is no evidence that Marshall made an affirmative misrepresentation that could have influenced Kusch. Therefore, there is no evidence to support a finding of fraud based on affirmative misrepresentations.

### Fraud by Omission

■■■ Marshall also contends that any finding of fraud by omission cannot be

"Misrepresentation" means any false statement of fact; or any statement of opinion based on a false statement of fact; or any statement of opinion that the maker knows to be false; or any expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion. "Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

You are instructed that by the term "other party" is meant the other party to the particular transaction with the misrepresenting party, or any member of a class of persons the misrepresenting party has reason to expect will rely upon his false representation.

supported by the evidence legally or factually.[5] Kusch responds that Marshall failed to disclose the anthrax to Gilmore–Barclay and Marshall's misrepresentation to Tom caused a failure to disclose anthrax. Kusch argues he was, therefore, harmed by these failures to disclose.

As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex.2001) (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995), and *Smith v. Nat'l Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979)). Whether such a duty exists is a question of law. *Id.* In Texas, a seller of real estate is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence on the part of the purchaser, or that a reasonable investigation and inquiry would not uncover. *Smith*, 585 S.W.2d at 658.

Marshall sold the ranch to Gilmore–Barclay. Any duty to disclose he had was to Gilmore–Barclay. Marshall was not the seller nor was he involved in the sales transaction with Kusch. Accordingly, Marshall had no duty to disclose anything to Kusch. We conclude that there is no evidence to support a finding of fraud by omission.

## Deceptive Trade Practices

Marshall contends that the DTPA does not apply as a matter of law because Marshall was not a party to the transaction. Kusch responds that he can recover under the DTPA because the act does not require privity. Both Marshall and Kusch cite *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex.1996), to support their position. In *Amstadt*, the Texas Supreme Court held that the DTPA does not require privity. *Id.* at 649. Nevertheless, the supreme court, while not limiting DTPA liability to those in contractual privity with the consumer, did not extend liability to all entities in the chain of production or distribution when none of those entities' alleged misrepresentations ever reached the consumer. *Id.* The supreme court required that a deceptive act must be committed in connection with the plaintiff's transaction to be actionable. *Id.* at 650. The connection can be demonstrated by a representation that reaches the consumer or by a benefit from the second transaction to the initial seller. *Id.* at 649; *Luker v. Arnold*, 843 S.W.2d 108, 113–14 (Tex.App.-Fort Worth 1992, no writ); *Tay-*

---

**5.** The part of Question No. 1 and its instruction that concerned fraud by omission provides as follows:

A) Fraud occurs when—
  a. a party conceals or fails to disclose a material fact within the knowledge of that party;
  b. the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth;
  c. the party intends to induce the other party to take some action by concealing

or failing to disclose the material fact; and
  d. the other party suffers injury as a result of acting without knowledge of the undisclosed fact.
  You are instructed that by the term "other party" is meant the other party to the particular transaction with the non-disclosing party or any member of a class of persons the non-disclosing party has reason to expect will rely upon his failure to disclose.

*lor v. Burk,* 722 S.W.2d 226, 229 (Tex.App.-Amarillo 1986, writ ref'd n.r.e.).

Here, none of Marshall's misrepresentations reached Kusch. Therefore, no misrepresentation was made in connection with the sale to Kusch. *See Amstadt,* 919 S.W.2d at 650; *Taylor,* 722 S.W.2d at 229. However, relying on *Luker,* Kusch maintains that because Marshall had a nonrecourse note with a lien on the property, he had a benefit from the sale that would make his nondisclosures connected with the transaction. Nonetheless, *Luker* is distinguishable. In that case, a developer sold a group of housing tracts to an intermediate purchaser/home builder. The sales contract provided for a nominal down payment on each lot followed by a subsequent payment immediately after the resale of each lot to a subsequent purchaser. *Luker,* 843 S.W.2d at 114. There was a direct benefit to the initial seller based on the intermediate seller's transaction. It was this benefit that made the initial seller connected with the subsequent transaction. *Id.* Unlike the situation in *Luker,* Marshall had completed his sales transaction. There was no benefit or agreement that created any benefit to Marshall if Gilmore–Barclay sold the property. Merely holding a purchase money note and lien on a property does not make the holder connected with a subsequent sale transaction. Without evidence that Marshall was connected with the sale to Kusch, the DTPA claim fails as a matter of law.

Because we have concluded that there is no evidence to support a finding of fraud based on affirmative misrepresentation or by omission and the DTPA claim fails as a matter of law, we resolve Marshall's first issue in his favor. When we uphold a no evidence issue, we render the judgment the trial court should have rendered. *Nat'l Life & Accident Ins. Co. v. Blagg,* 438 S.W.2d 905, 909 (Tex.1969). There-

fore, we reverse the trial court's judgment and render judgment that Kusch take nothing on his claims against Marshall. Because of our disposition of the first issue, we need not address Marshall's remaining points of error. *See* TEX.R.APP. P. 47.1.