**William Henry MYRE and Craig Development, Inc.,
Appellants,**

v.

**Carl MELETIO, Rusty Mobley, Jeff Schmitz, James Young, Bobby White, Renee Hill, Jeff Milford, James Hale, and Hilario Paulin, Appellees.**

**No. 05–08–00576–CV.**

Court of Appeals of Texas,
Dallas.

Feb. 26, 2010.

Rehearing Overruled April 12, 2010.

Richard B. Phillips, Jr., Scott P. Stolley, Thompson & Knight, L.L.P., Michael R. Johnson, Dallas, TX, George Ivan Alexander, Curtis, Alexander, McCampbell & Morris, P.C., Robert L. Scott, Scott, Money & Ray, Greenville, TX, for Appellants.

Jonathan F. Winocour, Winocour & Scarbrough, F. Leighton Durham, Durham & Pittard, LLP, David R. Weiner, Weiner Law Firm, Dallas, TX, Daniel J. Perkins, Watkins & Perkins, Greenville, TX, for Appellees.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion By Justice RICHTER.

This fraud case arises out of the purchase and sale of residential properties alleged to have diminished value because they are prone to flooding. A jury returned a verdict in favor of homeowners Carl Meletio ("Meletio"), Rusty Mobley ("Mobley"), Jeff Schmitz ("Schmitz"), James Young ("Young"), Bobby White ("White"), Renee Hill ("Hill"), Jeff Milford ("Milford"), James Hale ("Hale"), and Hilario Paulin ("Paulin") (collectively or in combination, the "Homeowners"), awarding damages for fraud and negligence against William Myre ("Myre"), Daniel Myre ("DM") and Craig Development, Inc. ("Craig Development"). The trial court required the Homeowners to make an election of remedies, and following the election, a judgment awarding damages for fraud was entered against Myre in favor of all Homeowners except Milford. In three issues on appeal, Myre argues the evidence of damages and liability for fraud is legally and factually insufficient to support the judgment. On cross-appeal, the Homeowners assert the trial court erred in denying their recovery against DM because he is individually liable for his fraud. Because we conclude the evidence is legally insufficient to support a judgment for fraud against Myre or DM, we reverse the trial court's judgment and remand the case for the Homeowners to make a new election of remedies.

## BACKGROUND

In 1996, Myre and DM purchased a tract of land in Hunt County. Myre and DM subsequently developed the Cole Estates subdivision on a portion of this land. In March 1999, Myre and DM executed a power of attorney to Lynn Craig, authorizing her to act on their behalf in real estate transactions. Craig is Myre's daughter and DM's sister. Craig is also the president and sole shareholder of Craig Development, which during the applicable time frame, was engaged in the business of developing residential property.

Myre and DM engaged Wisdom Engineering to draw a plat for the subdivision. There is a special flood hazard area near the lots that eventually became Cole Estates, and the initial plat that Wisdom prepared included lots in this area. But Myre and DM rejected the plat, and a new plat was prepared. The new version of the plat submitted to Hunt County for approval which ultimately became Cole Estates did not include any lots in the flood hazard area but did not include a drainage plan as required by county regulations.

On various dates, Myre conveyed five of the Cole Estates subdivision lots to Craig Development. Some of these transfers were made on the same day the lot was subsequently conveyed to the respective Homeowner who purchased it, but Craig Development is listed as the grantor on the deeds conveying the property to these Homeowners. Between 2000 and 2002, the Homeowners purchased lots in Cole Estates and Craig Development d/b/a John Lovett Homes constructed their homes. Hill purchased her property directly from Myre, and White and Paulin purchased their property from DM. Meletio, Schmitz,

Mobley, Hale, and Young purchased the lots Myre had conveyed to Craig Development. Milford did not purchase property from Myre, DM, or Craig Development. The seller of Milford's property was R. Hargrave, Inc., an entity that is not involved in this lawsuit.

The Homeowners' properties flooded during a significant rainstorm in 2002. Although the extent of the flooding varied, eight of the nine Homeowners suffered no flood damage to their homes. Paulin had some water enter his home, but did not know whether the water entered from below or leaked from the roof. The properties flooded again during rainstorms in 2003, 2004, and 2006, but like the 2002 event, none of the homes were flooded.

In 2004, the Homeowners sued Myre, DM, and Craig Development. The trial court subsequently granted the defendants' motion for partial summary judgment and disposed of numerous claims. The case was tried to a jury, and upon conclusion, the court submitted the issues of fraudulent nondisclosure and negligence for the jury's consideration. The jury charge included a separate damages question utilizing the same measure of damages for each defendant on the fraud claim and a separate damages question for each defendant on the negligence claim. The jury was not asked to apportion liability under section 33.003 of the Texas Civil Practice and Remedies Code.

The jury found that all three defendants committed fraudulent nondisclosure and that Myre and DM were negligent. The Homeowners moved for judgment and proposed to recover mix-and-match awards against all three defendants.[1] The Homeowners also sought to impose joint and

---

1. For example, Meletio requested judgment for fraud damages against Myre and Craig Development and negligence damages against

DM. Other Homeowners elected different combinations of fraud and negligence damages.

several liability for fraud against Myre. Myre, DM. and Craig Development moved for judgment notwithstanding the verdict on the fraud and negligence claims, and argued the Homeowners were only entitled to judgment against one defendant on one claim because the Homeowners had alleged a single, indivisible injury and the measure of damages was the same for each damages question submitted to the jury. Myre, DM, and Craig Development further argued that the Homeowners were not entitled to impose joint and several liability against Myre.

The trial court denied the motion for judgment notwithstanding the verdict, but required the Homeowners to elect a recovery on only one cause of action against a single defendant. The Homeowners elected to recover against Myre for fraud. A final judgment was entered, awarding damages for fraud against Myre as to eight of the nine Homeowners, a take-nothing judgment on Milford's claims, and a take-nothing judgment in favor of Craig Development and DM. This appeal followed.

## DISCUSSION

### *Did Myre Owe a Duty of Disclosure?*

In his second issue, Myre challenges the legal sufficiency of the evidence to support a judgment for fraud. In support of his argument, Myre claims he did not owe a duty of disclosure to the eight Homeowners to whom he did not sell property. As for Hill, the individual to whom Myre did convey property, Myre contends the evidence adduced to establish he was aware the property was prone to flooding is incompetent, and therefore cannot support the judgment.

 Fraud by omission is a subcategory of fraud because the omission or non disclosure may be as misleading as a posi-

tive misrepresentation of fact where a party has a duty to disclose. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.,* 217 S.W.3d 653, 670 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Thus, silence may be equivalent to a false representation when the circumstances impose a duty to speak on the party and he deliberately remains silent. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001). In the absence of a duty to disclose, however, a failure to disclose does not constitute fraud. *See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998); *Marshall v. Kusch,* 84 S.W.3d 781, 786 (Tex.App.-Dallas 2002, pet. denied). A duty to disclose may arise in certain situations involving partial disclosure or when the parties have a confidential or fiduciary relationship. *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 385 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Whether such a duty exists is a question of law. *Marshall,* 84 S.W.3d at 786.

 In the context of a real estate transaction, a seller is under a duty to disclose material facts that would not be discoverable by the exercise of ordinary care and diligence by the purchaser, or that a reasonable investigation and inquiry would not uncover. *Smith v. Nat'l Resort Communities, Inc.,* 585 S.W.2d 655, 658 (Tex.1979); *Marshall,* 84 S.W.3d at 786. But a seller has no duty to disclose facts he does not know. *Robinson v. Preston–Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982); *Prudential Ins. Co. of America v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 162 (Tex.1995); *see also HTM Restaurants, Inc. v. Goldman, Sachs & Co.,* 797 S.W.2d 326, 329 (Tex.App.-Houston [14th Dist.] 1990, writ denied) (holding party cannot be guilty of fraudulently concealing facts of which he is not aware). Similarly, a seller is not liable for failing to

disclose what he only should have known. *Prudential*, 896 S.W.2d at 162.

█ There is no evidence of an informal confidential relationship or a fiduciary relationship between Myre and any of the Homeowners. As for 8 of the 9 Homeowners, Myre not only had no relationship with them, he had no contact at all. Therefore, there is no basis for the imposition of a duty to disclose as between Myre and these 8 Homeowners. Because there is no duty to disclose, Myre cannot be liable for fraud. *See Marshall*, 84 S.W.3d at 786.

The Homeowners insist that Myre should be held responsible as a seller because he was "involved" in the transaction. Specifically, the Homeowners claim that insulating Myre from liability for failure to disclose "simply because his name was not on the deeds" would be "an unwarranted substitution of form over substance." The Homeowners' argument, however, does not avail to avoid the absence of express authority for this proposition. Although the Homeowners suggest we should not restrict characterization of a seller to the person named as the grantor on a deed, they offer no explanation of the mechanics or criteria to be employed in effecting such an expansive application. Significantly, the Homeowners neither plead nor advanced at trial any legal theory challenging the structure, substance, or legal effect of Myre's property transfer to Craig Development. Without more, the mere suggestion that something may be afoul is of no legal consequence. We therefore decline to extend the scope of a seller's duty of disclosure to some amorphous class of persons who may be "involved" in a sales transaction. Having concluded that there is no evidence to support a judgment for fraud against Myre as to the 8 Homeowners to whom Myre did not convey property, the question becomes whether

Myre owed a duty of disclosure to Hill, the individual to whom he did convey property.

Although Myre was the seller of the property conveyed to Hill, there is no evidence the relationship was anything more than an arms-length business transaction. Thus, a duty to disclose to Hill arises only if Myre had knowledge of the facts that were allegedly withheld and the facts would not have been discoverable by Hill's exercise of ordinary care and diligence or reasonable investigation and inquiry. *Id.*; *Prudential*, 896 S.W.2d at 162.

█ The Homeowners maintain Myre knew that the property was prone to flooding and the subdivision plat did not comply with Hunt County regulations requiring drainage plans. To establish Myre had actual knowledge that the property was prone to flooding, the Homeowners rely only on the testimony of Amy Moore, an individual who purchased property from Myre that is adjacent to Cole Estates. Moore testified that she had a conversation with Myre in 1998 when she was deciding whether to purchase her property. According to Moore, she and Myre were standing in the three acre field that eventually became her property, when Myre stated that the property "back there" would never be developed because it was prone to flooding. As he made this statement, Myre gestured toward the adjacent expanse of land. On cross-examination, Moore admitted that she assumed Myre was referring to all of the property between her property and FM6 to the north and Brushy Creek to the west. This area includes, but is not limited to, the land on which Cole Estates is situated. Although she claimed to have "understood" that Myre was referring to the entire expanse of property, she was unable to explain the basis for this understanding.

*Myre testified that he did not recall exactly what he told Moore, but denied*

telling her that nothing would be built on the property that became Cole Estates. Myre also observed, and the record reflects, that there is a lot of property "behind" Moore's property. Myre further testified that he has only seen Brushy Creek, a body of water in proximity to the property, overflow its banks one time—during the 2002 rain event at issue here.

■ Having reviewed the testimony, we conclude that Moore's lack of specificity and certitude is fatal to a finding of actual knowledge. Moore's testimony is based solely on her assumptions and conjecture about the meaning of Myre's statement and whether his gesture toward an expanse of land was intended to include the parcel of land on which Cole Estates was built. Testimony based solely on conjecture and speculation is incompetent. *General Motors Corp. v. Iracheta,* 161 S.W.3d 462, 470–71 (Tex.2005). We will sustain a no evidence issue if "(a) there is a complete absence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove that fact; (c) the evidence offered to prove a vital fact is no more than a scintilla; or (d) the evidence conclusively establishes the opposite of a vital fact. *Stewart v. Sanmina Texas L.P.,* 156 S.W.3d 198, 205 (Tex.App.-Dallas 2005, no pet.). Evidence does not exceed a scintilla if it is so weak as to create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004); *see also Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence."); *Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927 (Tex.1993) ("Some suspi-

cion linked to other suspicion produces only more suspicion, which is not the same as some evidence."). Because Moore's testimony lacks the requisite degree of factual specificity, it creates no more than a mere surmise or suspicion concerning Myre's knowledge of a vital fact. Accordingly, we conclude the Homeowners have not presented more than a scintilla of evidence that Myre had knowledge about whether the lots on which Cole Estates was built are prone to flooding.

In addition, even if the property in Cole Estates is prone to flooding, there is an absence of evidence as to whether Hill could have discovered this fact through the exercise of ordinary care and diligence or a reasonable investigation. Hill's closing documents reflect that the property is not in a flood hazard area and flood insurance is not required. But there is nothing to indicate whether Hill inquired about the property's proximity to a flood hazard area. Hill testified that when viewing the property for potential purchase, her ex-husband remarked to the real estate agent "it looks a little low down here" and inquired "does it ever flood?"[2] According to Hill, the agent responded in the negative. There is nothing in the record, however, that reflects whether Hill or her ex-husband made any additional inquiries or conducted an investigation following their observation that the property appeared to be "low." There is also nothing to indicate whether such an inquiry would have revealed whether the property is prone to flooding.

There is also no evidence Myre was aware that the subdivision plat did not comply with the applicable regulations governing drainage plans. While it is undisputed that the application for the Cole Estates subdivision did not include a

---

**2.** The Homeowners did not plead or prove an agency theory of recovery.

drainage plan, Myre testified that he relied on Wisdom to prepare and submit the plan. DM testified that neither he nor Myre knew that the regulations required a drainage plan, and there is no evidence in the record to establish otherwise.

Because there is no evidence Myre had knowledge of the facts he allegedly withheld, Myre owed no duty of disclosure to Hill. In the absence of such a duty, there can be no liability for fraud. *See Marshall*, 84 S.W.3d at 786. Myre's second issue is sustained. Our resolution of this issue obviates the need to consider Myre's remaining issues. Tex.R.App. P. 47.1.

### *Is DM Individually Liable for Fraud?*

 In a cross-issue, the Homeowners contend the trial court erred by requiring them to elect between recovery for fraud against Myre or DM because DM is individually liable for his fraud. Myre responds that the take-nothing judgment should be affirmed because there is no evidence DM concealed or failed to disclose a material fact within his knowledge. In the alternative, Myre asserts that if the Homeowners are entitled to recovery, there is no rational basis to apportion the damages among the defendants because the Homeowners alleged a single, indivisible injury.

Despite the fact that the jury found DM liable to all nine Homeowners, he only sold property to White and Paulin. Therefore, as we previously discussed, these two sales are the only transactions in which a duty to disclose might arise. But there is no evidence DM had any knowledge that Cole Estates was prone to flooding or that the subdivision plan did not comply with applicable drainage regulations. Therefore, DM did not owe a duty of disclosure to any of the Homeowners and cannot be held liable for fraud. *See Marshall*, 84 S.W.3d at 786. Because there was no basis to impose fraud liability on DM, the trial

court did not err in denying the Homeowners' recovery against him. The Homeowners' cross-issue is overruled.

### Conclusion

Because we have concluded the evidence is legally insufficient to support a judgment for fraud against Myre and DM, we reverse the trial court's judgment and remand the case for the Homeowners to make a new election of remedies. *See Gunn Infiniti, Inc. v. O'Byrne*, 18 S.W.3d 715, 718 (Tex.App.-San Antonio 2000, no pet.) (remanding to permit new election of remedies following resolution of issues on appeal in accordance with Texas Supreme Court's instruction).