Kurtis WEBB and Ingrid Webb, Appellants

v.

Brad STOCKFORD, Appellee.

No. 05–08–01330–CV.

Court of Appeals of Texas, Dallas.

Jan. 10, 2011.

Jay K. Gray, Gray Law, L.L.P., Andrew A. Bergman, Bergman, Stein & Bird, L.L.P., Dallas, TX, for Appellants.

John Wesley Raley, Raley & Bowick, LLP, Houston, TX, Diana L. Faust, Gordon K. Wright, Cooper & Scully, P.C., Dallas, TX, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion By Justice MOSELEY.

In this legal malpractice case, appellants Kurtis and Ingrid Webb alleged their former attorney, appellee Brad Stockford, mishandled their lawsuit against a seller and the seller's real estate agent based on alleged misrepresentations and non-disclosures made in connection with the Webbs' purchase of a house. The trial court granted Stockford's motion for a judgment notwithstanding the jury's verdict (JNOV). The Webbs appeal.

We conclude there is no evidence that the real estate agent made any misrepresentations or failed to disclose information to the Webbs, and there is no evidence that any judgment against the seller in the underlying suit would have been collectible. As a result, there is no evidence that—but for Stockford's negligence—the Webbs would have obtained a collectible judgment in the underlying suit. Therefore, we conclude the trial court properly granted JNOV in Stockford's favor. We affirm the trial court's final judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Suit

The Webbs bought a house from its original owner, Faith Werner. Werner's real estate agent in the transaction was Linda Ault. The Webbs moved in during May 2002. Shortly thereafter, the Webbs discovered that water penetration from the roof had caused interior damage, which had been repaired.

Believing that both Werner and Ault misrepresented and failed to disclose information about this and other problems, the Webbs contacted attorney David S. McCreary about filing suit. McCreary investigated their claims and then turned the case over to his associate, Stockford. Stockford also investigated their claims and filed suit on their behalf in June 2003. In that suit, the Webbs alleged Werner and Ault made false or misleading statements, including statements about previous water penetration, or failed to disclose material facts. As against both defendants, the Webbs alleged common-law fraud, statutory fraud in a real estate transaction, and negligent misrepresentation. The Webbs also alleged a DTPA claim against Werner. They requested economic and exemplary damages, rescission, and attorney's fees.[1]

The case was set for trial on Monday, January 24, 2005. However, with the Webbs' agreement, Stockford filed a handwritten motion non-suiting the action without prejudice to refiling it.[2] Thereafter Stockford ceased representing the Webbs. The underlying case was not refiled.

### B. Malpractice Suit

Subsequently, the Webbs filed this suit against Stockford for legal malpractice.[3] They alleged that non-suiting the underlying case after the two-year statute of limitations on their DTPA claim had passed was "fatal" to their claims against Werner and Ault.

At the close of the trial in the malpractice suit, two questions were submitted to the jury. In response to the first question, the jury found that Stockford's negligence caused the occurrence in question. In connection with that question, the jury was instructed: "To establish proximate cause,

---

1. The original petition is the only pleading from the underlying suit in the record.

2. There is evidence in the record that on the Thursday before the underlying lawsuit was set for trial, opposing counsel alerted Stockford that Stockford had failed to designate expert witnesses, including a witness concerning attorney's fees. On the day of trial, Stockford conferred with the trial court and opposing counsel and, separately, with the Webbs. Stockford told the Webbs the trial court would give them a thirty-day continuance but would "freeze" discovery. According to Ingrid Webb, Stockford admitted he "dropped the ball" concerning witness designations and he suggested to the Webbs that they non-suit the case and refile it later. The Webbs testified Stockford told them the statute of limitations on the DTPA claim was three years; they discovered later that the applicable limitations period was in fact two years and had

already expired. There was testimony that the four-year statute of limitations on their statutory real estate transaction fraud claim had not expired when they non-suited their action.

3. The Webbs also sued McCreary and the law firm McCreary and Stockford, L.P. However, the only claim that was submitted to the jury was the Webbs' claim for negligence against Stockford. All other claims against Stockford, McCreary, or the law firm were non-suited or disposed of through partial summary judgment. The Webbs do not challenge the trial court's disposition of the other claims. In addition, all three defendants filed a notice of conditional cross-appeal, conditioned on a reversal of the trial court's final judgment. In light of our resolution of the case, we need not address these claims. Thus, we make no further mention of McCreary, the law firm, or the other claims.

Plaintiffs must show that they would have prevailed in their claims against Faith Werner and Linda Ault but for the negligence of Brad Stockford." In response to the second question, the jury found that the Webbs would have "recovered and collected" $225,000 if the underlying suit had been properly prosecuted.[4]

Stockford moved for JNOV on multiple grounds. The trial court granted the motion without specifying the grounds on which it relied and signed a take-nothing judgment against the Webbs. This appeal followed.

## II. APPLICABLE LAW

■■■■ A legal malpractice claim is a claim for professional negligence. *Golden v. McNeal,* 78 S.W.3d 488, 492 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). To recover, the plaintiff must show: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.,* 192 S.W.3d 780, 783 (Tex.2006). When the claim is that lawyers improperly represented the plaintiff in another case, the plaintiff must prove and obtain findings as to the amount of damages that would have been recoverable and collectible if the other case had been properly prosecuted. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Res. Corp.,* 299 S.W.3d 106, 112 (Tex.2009). This aspect of the malpractice plaintiff's burden is commonly referred to as the "suit within a suit" requirement. *See Schlager v. Clements,* 939 S.W.2d 183, 187 (Tex.App.-Hous-

ton [14th Dist.] 1996, writ denied); *see also Gomez v. Hagood,* No. 05–99–00260–CV, 2000 WL 992287, at *2 (Tex.App.-Dallas July 20, 2000, pet. denied) (not designated for publication) (citing authority for "suit within a suit").

## III. STANDARD OF REVIEW

■■■ A court may disregard a jury's verdict and render a JNOV if no evidence supports the jury's findings, or if a directed verdict would have been proper. *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex.2003) (per curiam); *see* Tex.R. Civ. P. 301. To determine whether a JNOV is appropriate, we apply the legal sufficiency standard. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823–25 (Tex.2005); *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex. 2003) (per curiam). A JNOV is appropriate when: (1) there is a complete absence of a vital fact; (2) rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *City of Keller,* 168 S.W.3d at 810. We view the evidence and inferences in the light most favorable to the jury's findings. *See id.* at 823. We must credit evidence that supports the judgment if reasonable jurors could, and we must disregard contrary evidence unless reasonable jurors could not. *See id.* at 827. If the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of the jurors, who alone determine the credibility of the wit-

---

4. The second question asked:

What sum of money, if paid now in cash, would fairly and reasonably compensate Kurtis and Ingrid Webb for their loss, if any, resulting from the conduct for which you have answered "Yes" in Question No. 1?

The sum, if any, that Kurtis and Ingrid Webb would have recovered and collected if the original underlying suit had been properly prosecuted.

Do not include any amount for any damages resulting from [any negligence of the Webbs] ... [or interest]....

nesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *See id.* at 822. We affirm a JNOV if it is supported by any ground. *See Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 90 (Tex.App.-Corpus Christi 1992, writ dism'd w.o.j.).

## IV. DISCUSSION

In their second issue, the Webbs argue the trial court erred in granting JNOV because there was more than a scintilla of evidence to support the jury's finding that Stockford's negligence proximately caused them damages.

### A. Misrepresentation by Ault

One of Stockford's arguments in support of his motion for JNOV was that there was no evidence Ault made any misrepresentation or omission in connection with the sale. Thus, he asserted the Webbs failed to prove their suit-within-a-suit requirement as to Ault—i.e., that but for Stockford's negligence, the Webbs would have obtained a judgment against Ault.

Misrepresentation is a falsehood or untruth with the intent and purpose to deceive. *Vela v. Marywood,* 17 S.W.3d 750, 761 (Tex.App.-Austin 2000), *pet. denied,* 53 S.W.3d 684 (Tex.2001) (per curiam); *see In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001) (orig. proceeding) (an element of commonlaw fraud is material misrepresentation); *Hagans v. Woodruff,* 830 S.W.2d 732, 735–36 (Tex. App.-Houston [14th Dist.] 1992, no writ) (an element of negligent misrepresentation is providing false information for the guidance of others in their business); TEX. BUS. & COM.CODE ANN. § 27.01(a)(1) (West 2009) (statutory fraud in real estate transaction claim may involve a misrepresentation of material fact).

As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *Marshall v. Kusch,* 84 S.W.3d 781, 786 (Tex.App.-Dallas 2002, pet. denied). Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. *Id.* Whether such a duty exists is a question of law. *Id.*

In support of their second issue, the Webbs argue that there was evidence that Ault made false representations in connection with the sale of the house. Specifically they refer to a document called a seller's disclosure notice, testimony from Stockford, and testimony from Ingrid Webb.

### 1. Seller's Disclosure Notice

The seller's disclosure notice was not admitted into evidence, although there was testimony that it indicated, among other things, that there had been no water penetration. However, there was also no evidence that anyone other than the seller, i.e., Werner, completed it. Accordingly, any evidence of false representations or material omissions in the seller's disclosure notice is no evidence of misrepresentations by Ault.

### 2. Stockford's Testimony

Next, we consider the Webbs' argument that the jury "could have relied solely upon the testimony of Stockford" in making its causation determination. They argue that his testimony about the discovery he conducted in the underlying suit and about what he intended to prove in that suit was evidence that Ault made misrepresentations to them during the purchase of their home.

Stockford responds that his counsel objected to use of his testimony as a fact witness to prove the Webbs would have recovered in the underlying case and that

objection was properly sustained. He also argues he had no personal knowledge of the facts necessary to prove the Webbs' claims. Therefore, the Webbs were left with legally insufficient evidence to support the suit-within-a-suit requirement.

The Webbs point to Stockford's testimony that he "thought they had a pretty good chance of prevailing at trial." The Webbs characterize this testimony as an admission by Stockford that they would have prevailed against Ault had they been able to present their case in court, and that this admission is some evidence of causation in the malpractice suit. We disagree.

To place this testimony in context, Stockford was asked a series of questions about his handling of the underlying lawsuit.[5] He was asked about his investigation of the Webbs' claims, specifically about conducting depositions and discovery. After further questioning about what Stockford believed about the allegations, Stockford's counsel objected that Stockford was not a fact witness. The Webbs' counsel responded, asserting that Stockford was a fact witness: "We're here today about his investigation of this. I'm simply asking him if he has the knowledge, in his opinion, those things were knowingly or intentionally [sic]." The trial court sustained the objection, saying, in part:

[I]f this were—if this were the original courtroom and the original case, frankly, whether this—this witness was a—was a lawyer or just somebody off the street, they don't have—they would not have any first hand knowledge.

He didn't see it. He didn't do it. He just is going by what somebody told him, and that would not be admissible. So it's not any more admissible simply because he's the attorney and somebody told him.

. . . .

You're asking more than his opinion because you've gone beyond that, and you're asking if it was true, if he knowingly and intentionally and all the rest of it. So I think that, to the extent we're talking about what he received or whatever it is, good, bad, indifferent, true, untrue, whatever, he did receive some information. That's okay. But as far as his knowledge of whether it is accurate, he couldn't know that.

The Webbs also rely on Stockford's testimony about an information sheet—the "Real Estate Disclaimers"[6]—that Werner

5. During the Webbs' opening statement and in response to a reference to documents from the underlying case, Stockford's counsel objected to the use of Stockford as a fact witness to prove the Webbs' claims in those pleadings. Similar ground was covered at the beginning of direct examination, before the specific testimony the Webbs rely on. In those earlier exchanges, Stockford was asked whether he performed any investigation of the Webbs' case. He said he had and had taken Werner's and Ault's depositions. Stockford was asked whether it was his understanding that Werner made a misrepresentation, and he replied he believed Werner made misrepresentations on the seller's disclosure statements. Stockford's counsel requested a running objection "to questions to [Stockford] that go to the truth or falsity of the matters that his clients claim in the underlying lawsuit[.]" The trial court granted the running objection.

Stockford testified further that he did not "personally know" whether the roof was defective when the Webbs bought the house, but the seller's disclosure notice said the roof was "brand new," which was "not accurate," and that there was no water penetration in the house and "[t]here had been." Later, counsel objected that Stockford was "not a fact witness to the claims made by his parties." The trial court said Stockton "if he knows something is true, he can answer that. If he does not know it's true, he can answer to what his understanding is. . . ." The trial court overruled the objection but gave counsel "a running objection."

6. That document, which was not admitted into evidence, includes a paragraph headed

had filled out.[7] Stockford said he "recalled there being a statement about water penetration." Stockford's counsel objected that Stockford's memory of what the document might say was "not really relevant"; the trial court sustained the objection. Subsequently, Stockford testified that Werner said she provided the "Real Estate Disclaimers" document to Ault but that Ault would deny that she knew about the document. Stockford also said he "believed that there were misstatements ..." and he "believed" Ault "was somehow responsible because of [Werner's statements]." When asked if he "believed" Werner's claim, he said that was the evidence he obtained through discovery. He said that although these were allegations about Werner's and Ault's misrepresentations revealed through his investigations, he "still had to prove it."

Thus, Stockford's testimony about what Ault knew and failed to disclose relates to Stockford's preparation for trial, the evidence he obtained in discovery, and what he hoped the evidence would prove at trial. The trial court sustained objection to this testimony on grounds that it was "improper to ask Counsel to be a fact witness when all he was doing was bringing forward the claim of his party and trying to assemble the evidence." *See* Tex.R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter ...."); *see Southtex 66 Pipeline Co., Ltd. v. Spoor,* 238 S.W.3d 538, 544–45 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (affidavit testimony inadmissible because of lack of personal knowledge of facts stated therein, amounting to no evidence). .

In light of the record detailed above, Stockford's statement that he thought the Webbs had a pretty good chance of prevailing at trial is without supporting facts and is therefore merely conclusory as to Ault. *See Brown v. Brown,* 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied). Specifically, it is not evidence that Ault misrepresented or failed to disclose any material fact about the roof or water penetration. Moreover, Stockford's beliefs as to what the evidence would prove do not constitute personal knowledge of the facts in the underlying lawsuit. Stockford's testimony about the underlying suit concerned the allegations in the Webbs' petition—what he expected to prove—and his discovery. In addition, the Webbs do not challenge the trial court's rulings concerning Stockford's testimony. Those rulings leave this testimony without probative value as to the suit-within-a-suit requirement.

### 3. Ingrid Webb's Testimony

Finally, the Webbs rely on Mrs. Webb's testimony that she "felt" that Ault made a false representation to her. But that is a conclusory statement, devoid of any underlying facts supporting the conclusion. *See id.* The Webbs do not direct us to any specific evidence that Ault made a statement to them about the condition of the house.

### 4. Conclusion

We conclude the Webbs failed to produce evidence that Ault made false representations to them or omitted material

---

"disclosure" stating there was "ice damage" in 2000; "[n]o problem to roof or eves"; and "[i]nspected and interior repair by-Goodman Home Builders."

**7.** When the Webbs' counsel sought to introduce the "Real Estate Disclaimers" document, Stockford's counsel objected to its admission on hearsay grounds. The trial court sustained that objection. The Webbs do not complain on appeal that the trial court erred in not admitting the "Real Estate Disclaimers" document.

facts concerning the sale of the house. *See* TEX. BUS. & COM.CODE ANN. § 27.01(a)(1); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 758; *Marshall*, 84 S.W.3d at 786; *Vela*, 17 S.W.3d at 761; *Hagans*, 830 S.W.2d at 735–36; *see also City of Keller*, 168 S.W.3d at 810. As a result, there is no evidence that—but for Stockford's negligence in the underlying suit—the Webbs would have recovered judgment against Ault. *See Belt*, 192 S.W.3d at 783. We resolve the Webbs' second issue against them to this extent.

### B. Collectibility of any Judgment from the Underlying Suit

In support of his motion for JNOV, Stockford also argued that the Webbs failed to prove that any judgment received in the underlying case would have been collectible. On appeal, the Webbs assert there was evidence as to the collectibility of a judgment in the underlying case. Because of our resolution of the Webbs' second issue with respect to the evidence of Ault's liability in the underlying suit, we consider the Webbs' argument concerning the evidence of collectibility of a judgment only as to Werner.

Generally, the amount of an underlying judgment that would have been collectible is the greater of

(1) the fair market value of the underlying defendant's net assets that would have been subject to legal process for satisfaction of the judgment as of the date the first judgment was signed or at some point thereafter, or (2) the amount that would have been paid on the judgment by the defendant or another, such as a guarantor.

*Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 114. The plaintiff must prove the final judgment in the underlying case would have been collectible on or after the date it was first signed. *See id.* at 113–14. Additionally, if the evidence

concerning collectibility relates to a date prior to the final judgment in the underlying case, the evidence must also show "a reasonable probability that the defendant's financial condition did not change during the time before a judgment was signed in a manner that would have adversely affected collectibility." *Id.* at 114.

As evidence of the collectibility of a judgment against Werner, the Webbs rely on the testimony of David McCreary. He testified that before the underlying suit was filed (in 2003), he investigated Werner's solvency and discovered that she had homestead property worth about $500,000, and a non-exempt attachable condominium that may have been in Florida, resulting in "a possibility of solvency." Disregarding the homestead, the only evidence of Werner's financial condition was her past ownership of a Florida condominium.

However, Kurtis Webb testified that, by July 2003, his wife had confirmed that Werner sold a Florida condominium by looking "it up on the Sarasota County web page." (There was no further identification of the source of that information.) There was no testimony relating the amount Werner received from the sale of the condominium or whether she still had the sales proceeds, or relating to existence or fair market value of any other assets subject to legal process in satisfaction of a judgment as of the date the judgment in the underlying lawsuit would have been signed. *See id.* Nor was there any evidence of an alternative basis for Werner's solvency, i.e., evidence of her "current income, profits, or access to finances" that could have been diverted to satisfy a judgment, or of the amount an insurer or guarantor would have paid on the judgment. *See id.*

Even if the above evidence was sufficient to prove Werner's financial condition

at one time, it is still legally insufficient to prove the Webbs could have collected a judgment against Werner. To establish collectibility, the Webbs needed evidence showing the judgment would have been collectible on or after the date it would have been first rendered. *See id.* at 113–14. At the earliest, this would have been in January 2005, when the Webbs non-suited their case against Werner instead of going to trial. But the Webbs presented no evidence more recent than July 2003. Additionally, they presented no evidence showing a reasonable probability that—between July 2003 and January 2005—Werner's financial condition did not change in a manner that would have adversely affected collectibility. In short, there is no "gap time" evidence negating changes in Werner's financial condition between July 2003 and January 2005 that would have adversely affected her ability to respond in judgment. *See id.* at 114.

We conclude the Webbs failed to produce evidence that a judgment against Werner in the underlying suit would have been collectible. *See id.* at 113–14. As a result, there is no evidence that—but for Stockford's negligence in the underlying suit—the Webbs would have recovered a collectible judgment against Werner. *See id.; Belt,* 192 S.W.3d at 783. We resolve the remainder of the Webbs' second issue against them.

## V.  CONCLUSION

Our resolution of the Webbs' second issue is dispositive. Because there was no evidence the Webbs would have prevailed on their claims against Ault or that they would have collected on any judgment against Werner, there is no evidence to sustain the jury's finding that Stockford's

negligence proximately caused their damages. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P.,* 299 S.W.3d at 112; *Schlager,* 939 S.W.2d at 187. Therefore, we conclude the trial court did not err in granting Stockford's JNOV on this ground. *See Kelly,* 832 S.W.2d at 90.[8]

We affirm the trial court's final judgment.

---

8.  We need not address the Webbs' first issue directed to Stockford's negligence, issues three and four concerning the trial court's

abuse of discretion in admitting certain evidence, or issue five directed to cross examination of Stockford. *See* TEX R.APP. P. 47.1.