**Gregery S. SMITH and Philip Langley, Appellants,**

v.

**KNC OPTICAL, INC., Appellee.**

No. 05–08–00653–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2009.

---

Ernest Walter Leonard, Friedman & Feiger, L.L.P., Dallas, TX, for Appellant.

C. John Scheef III, Scheef & Stone, L.L.P., Dallas, TX, J. Mitchell Little, Scheef & Stone, L.L.P., Frisco, TX, for Appellee.

Before Justices MOSELEY, O'NEILL and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Gregery S. Smith and Philip Langley appeal the trial court's judgment rendered against them in favor of KNC Optical, Inc. In the first and second issues, respectively, Smith and Langley each challenges the legal and factual sufficiency of the evidence to support the jury's fraud verdict. In their third issue, Smith and Langley assert charge error. We sustain the first and second issues and reverse the trial court's judgment in part, rendering judgment that KNC take nothing on its fraud claims against Smith and Langley. We affirm the judgment in all other respects.

## I.

We first address Smith and Langley's first and second issues challenging the legal and factual sufficiency of the evidence to support the verdict against each of them for common law fraud through affirmative misrepresentation. Because of these challenges, it is necessary for us to review the evidence in some detail, beginning with the nature of KNC's fraud allegations.

KNC sued Smith and Langley individually, in addition to E'lite Optik US, L.P., for fraud by affirmative misrepresentation. KNC alleges it began selling eyeglass frames to E'lite in 2002 at the price of $8.40 per frame. After doing business with E'lite for a year, the parties signed a Vendor Agreement. KNC claims that, although not provided for by the Vendor Agreement, E'lite, Smith, and Langley coerced KNC to pay cash kickbacks to Smith and Langley in the amount of $2.00 per frame. KNC contends those cash payments were contrary to the terms of the Vendor Agreement and were, in effect, payments made in response to extortion by Smith and Langley. According to KNC, Smith and Langley threatened to withhold payments to KNC unless KNC made the cash payments to Smith and Langley. KNC contends E'lite, Smith, and Langley never intended to fulfill the terms of the Vendor Agreement, but instead fraudulently induced KNC into the contract by making misrepresentations concerning payments. Thus, KNC appears to assert fraudulent inducement claims as well as fraud by demanding cash payments as a requisite to payment under the Vendor Agreement. E'lite is not a party to this appeal.

The evidence admitted at trial shows that E'lite, founded by Smith in 1996, is in the business of designing and selling eyewear. In 2002, KNC, a Korean company that supplied eyeglass frames, began doing

business with E'lite. KNC served as a broker or middleman for E'lite with manufacturing facilities in China and Korea. Keung Woo Lee, president of KNC, first met and dealt with James McKenna, vice-president of product development for E'lite. McKenna worked at E'lite from around 2000 until 2003. According to Lee, McKenna advised Lee that if KNC wanted to do business with E'lite, KNC must pay back to E'lite $2.00 for each eyeglass frame sold by KNC to E'lite. This payment was referred to at trial as a cash commission. According to Lee, he made the choice to pay the $2.00 per frame commission from the very first purchase order from E'lite.

Shin Woo "Kris" Park, head of quality control for KNC, also testified that from the first time KNC began doing business with E'lite, KNC was asked to give a $2.00 cash commission per frame when KNC paid invoices. Park testified that $2.00 per frame was returned to E'lite for every single purchase order. She said the cash commissions were just a requirement for doing business with E'lite. Park also testified the cash payments made through August 2003 were made to McKenna and she understood from McKenna the payments were "going to Smith." Several e-mail communications to and from Park relating to "commissions" were also admitted. Those e-mails show no dispute with KNC that commissions were part of the transactions with E'lite. The e-mails included transmissions in 2004 and 2005, after the Vendor Agreement was signed.

With respect to execution of the Vendor Agreement, Lee, who does not speak English, testified the signature page was given to him in November 2003 and he did not read the document or have it translated before he signed it. He also never identified the person giving him the document to sign. Lee testified KNC had been doing business with E'lite for about a year

at the time he signed the Vendor Agreement on behalf of KNC. The Vendor Agreement was also signed by Jim Hamaker as a principal of E'lite; neither Smith nor Langley were signatories. Lee did not testify to any communications with Smith or Langley regarding execution of the document.

Pursuant to the terms of the Vendor Agreement, KNC was to provide certain eyewear frames to E'lite at $8.40 per frame, but no terms of payment are specified in the agreement itself. The paragraph entitled "Payment Terms" contains references to mailing of invoices, shipment of goods, and cash discounts, but is silent as to payment terms. KNC does not dispute the Vendor Agreement's "agreed upon price" of $8.40 per frame or that E'lite was invoiced for the frames at $8.40 each. The Vendor Agreement contains no reference to a $2.00 cash commission.

Testimony related to Smith's involvement with KNC showed that Lee did not meet Smith until KNC had been doing business with E'lite for over a year. A significant dispute exists between Smith's testimony that he never discussed with Lee the $2.00 per frame commission and Lee's testimony that, after execution of the Vendor Agreement, E'lite would not pay KNC unless the commission was paid. KNC references no evidence, however, that Smith made any representations related to execution of the Vendor Agreement.

Testimony related to Langley's involvement with both E'lite and KNC showed Langley was a twenty percent owner of E'lite from September 2003 to September 2004. By the end of 2004, he owned approximately thirty-five percent of the company. Langley testified he had spoken with Lee in May or June 2003 as part of Langley's due diligence review prior to purchasing an interest in E'lite. Langley

testified he came to work at E'lite just before McKenna was terminated in September 2003. Smith and Langley were co-presidents of E'lite after Langley joined the company. Langley testified E'lite had already been doing business with KNC since the beginning of 2002. Langley did not see the Vendor Agreement until Langley's deposition was taken in 2006. Langley also had no discussion with Lee concerning execution of the Vendor Agreement.

The jury found against E'lite, Smith, and Langley on KNC's fraud claim and awarded damages of $357,000 against Smith, $192,500 against Langley, and $500,000 in exemplary damages against Smith based on the fraud finding. The jury also awarded damages against E'lite for breach of the Vendor Agreement for purchase orders paid subsequent to execution. E'lite is not a party to this appeal.

## II.

■ Smith and Langley, as the parties attacking the legal sufficiency of an adverse finding on an issue for which they did not have the burden of proof, must demonstrate on appeal there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Pete Dominguez Enters., Inc. v. County of Dallas,* 188 S.W.3d 385, 387 (Tex.App.-Dallas 2006, no pet.). Under a no-evidence point, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in support. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). A legal insufficiency challenge fails if there is more than a scintilla of evidence to support the verdict. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex.1998). If, however, the evidence offered to prove a vital fact is so weak as to do no more than create a surmise or suspicion of its existence, the evidence is no more than a scintilla and is legally no evidence. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the appellate court may not substitute its judgment for that of the jury. *City of Keller,* 168 S.W.3d at 822; *see also Kindred,* 650 S.W.2d at 63 (there is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact). The standard on our no-evidence factual sufficiency review is the same as for legal sufficiency—Smith and Langley must demonstrate there is no evidence to support the adverse finding. *Brown & Root, Inc. v. Moore,* 92 S.W.3d 848, 850 (Tex.App.-Texarkana 2002, pet. denied).

## III.

■ To prevail on its fraud claim, KNC had to prove that Smith and Langley (1) made a material misrepresentation, (2) they knew the representation was false or made it recklessly without any knowledge of its truth, (3) they intended to induce KNC to act upon the representation, and (4) KNC relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001). *See also Formosa Plastics,* 960 S.W.2d at 47. Here, the trial court instructed the jury regarding these requirements and further instructed the jury that a "misrepresentation" means a false statement of fact or a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

■ Thus, to recover against Smith and Langley on its fraud claim, KNC had to prove first that Smith and Langley each made an actual, material misrepresentation. *Johnson v. Brewer & Pritchard,* 73

S.W.3d 193, 210 n. 45 (Tex.2002). KNC also had to prove that it acted in reliance on the material misrepresentation. *See Ernst & Young*, 51 S.W.3d at 578; *Trenholm v. Ratcliff*, 646 S.W.2d 927, 929–30 (Tex.1983). "Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Amer. Med. Int'l Inc. v. Giurintano*, 821 S.W.2d 331, 338 (Tex.App.-Houston [14th Dist.] 1991, no writ).

■ With respect to its fraudulent inducement claim, KNC alleges in essence that Smith and Langley, with no intent to honor the terms, caused KNC to execute the Vendor Agreement. When one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud. *Formosa Plastics*, 960 S.W.2d at 46 (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 592 (Tex. 1992)). KNC had to present evidence that Smith and Langley made misrepresentations relating to entry of the Vendor Agreement with the intent to deceive and with no intention of performing as represented. *Id.* at 48. Smith and Langley assert the record reveals no evidence of any such affirmative misrepresentation by either Smith or Langley. We agree.

KNC points to no evidence that Smith or Langley was involved in Lee's execution of the Vendor Agreement or his decision to sign the agreement. Neither Smith nor Langley signed the agreement; it was executed by Hamaker on behalf of E'lite. KNC does not attempt to dispute Langley's testimony that he saw the Vendor Agreement for the first time at his deposition in this lawsuit. Although we know Hamaker's signature is on the Vendor Agreement on behalf of E'lite, the record is silent as to any communication with any person regarding Lee's execution of the document. In fact, Lee testified he did not read the Vendor Agreement. Additionally, KNC does not attempt to claim anyone represented the $2.00 cash commission would end upon execution of the Vendor Agreement. To the contrary, both Lee and Park testified the $2.00 cash commission had been the arrangement from the first invoice.

On this record, and considering the evidence in the light most favorable to the verdict, we find no evidence to support the jury's verdict against Smith and Langley individually for fraud in the inducement. *See Spethmann v. Anderson*, 171 S.W.3d 680, 690–91 (Tex.App.-Dallas 2005, no pet.) (affirmative misrepresentation fraud judgment reversed as to parties for which record contains no evidence of affirmative misrepresentation or supplying false information) *See Marshall v. Kusch*, 84 S.W.3d 781, 785 (Tex. App.-Dallas 2002, pet. denied) (no affirmative misrepresentation made to plaintiff regarding anthrax on property, and fraud judgment reversed).

■ We next address KNC's fraud claim that Smith and Langley demanded the $2.00 cash commissions as a condition to payment under the Vendor Agreement. Even assuming, without finding, that some evidence supports KNC's position that, after execution of the Vendor Agreement, Smith and Langley refused to pay KNC unless the $2.00 cash commission was paid, such evidence alone does not constitute fraud. *See Safety Anchor Prods., Inc. v. Pauree*, No. 08–01–00341–CV, 2003 WL 152829, at *2–3 (Tex.App.-El Paso Jan. 23, 2003, no pet.) (mere failure to perform not fraud; failure to pay commissions, coupled with a material misrepresentation of intent to pay at time contract signed is fraud). *See also Formosa Plastics*, 960 S.W.2d at 48 (mere failure to pay a contract is not fraud; there must be a representation made without intent of performing as rep-

resented when contract entered); *Schindler v. Austwell Farmers Co-op.*, 841 S.W.2d 853, 854 (Tex.1992) (failure to perform, standing alone, is no evidence of fraud).

Conditioning performance of the Vendor Agreement on cash commission payments not part of the express terms of the agreement could be evidence of fraudulent inducement if KNC had presented evidence of a misrepresentation by Smith or Langley as part of execution of the Vendor Agreement. *See Formosa Plastics*, 960 S.W.2d at 48. Requiring a cash commission not referenced in the Vendor Agreement also could be evidence of breach of contract, as apparently found by the jury in favor of KNC and against E'lite. Standing alone, however, any requirement by Smith or Langley of cash commissions that were part of KNC's and E'lite's business dealings from the first transaction, is not fraud. Contrary to KNC's assertion that invoices would not be paid without the $2.00 per frame payment, the e-mails between Park and Langley show some of KNC's invoices were paid and commissions were owing. Based on our review and resolution of KNC's fraudulent inducement claim in favor of E'lite, we find no evidence has been presented to convert KNC's contract claims into fraud claims.[1]

▐ We sustain Smith's first issue and Langley's second issue to the extent those issues challenge the factual and legal sufficiency of the evidence to support KNC's claim of fraud through affirmative misrepresentation. When we uphold a no evidence issue, we render the judgment the trial court should have rendered. *See Nat'l Life & Accident Ins. Co. v. Blagg*, 438 S.W.2d 905, 909 (Tex.1969). Therefore, we reverse the trial court's judgment against Smith and Langley and render judgment that KNC take nothing on its fraud claims against Smith and Langley.

### IV.

In their third issue, Smith and Langley complain about the submission of the elements of fraud damages in the jury charge. Because the first and second issues are dispositive as to Smith and Langley, we do not address the third issue. *See* Tex.R.App. P. 47.1.

### V.

In conclusion, we reverse the trial court's judgment against Gregery S. Smith in the amount of $357,000 actual damages and in the amount of $500,000 punitive damages. We reverse the trial court's judgment against Philip Langley in the amount of $192,500. We render judgment that KNC Optical, Inc. take nothing on its claims against Gregery S. Smith and Philip Langley. We affirm the trial court's judgment in all other respects.

---

1. At trial, the issue of whether cash commissions were actually paid was hotly contested. Any inconsistencies in that evidence do not affect the result because KNC failed to produce any evidence of fraudulent inducement by Smith and Langley, individually.