In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00054-CV**
_____

**PATRICIA A. TOWERY AND JASON R. WALDON, Appellants**

**V.**

**REALTY PARTNERS, INC.
D/B/A CENTURY 21 REALTY PARTNERS, Appellee**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 17-03-03389-CV**
_____

**MEMORANDUM OPINION**

Appellants Patricia A. Towery and Jason R. Waldon (hereafter collectively referred to as "Appellants") complain the trial court erred in granting summary judgment to Appellee Realty Partners, Inc., D/B/A Century 21 Realty Partners ("Realty Partners") on their counterclaims for common law fraud, fraud by nondisclosure, fraud by misrepresentation, breach of contract, and declaratory relief. Appellants also complain the trial court erred during trial by excluding evidence,

1

failing to submit a requested jury charge instruction and disregarding the jury's findings and signing a judgment combining two separate causes of action and awards. We affirm the trial court's order granting Realty Partners' No-Evidence Motion for Summary Judgment and the trial court's judgment awarding Realty Partners $16,280 in damages.

BACKGROUND

In March 2017, Realty Partners filed suit against Appellants for breach of contract and promissory estoppel seeking $16,280 in actual damages, costs, attorney's fees, and interest. Realty Partners alleged that on October 12, 2016, Appellants entered into a Residential Buyer/Tenant Representation Agreement (the "BRA") with Gabe Wiesner, a licensed realtor and authorized representative of Realty Partners, and the BRA, which extended from the signing date until January 31, 2017, and obligated Appellants to work exclusively through Wiesner in acquiring property in the Tomball market area. According to the BRA, Appellants agreed to pay Wiesner a three percent commission of the gross sales price if Appellants agreed to purchase property in the Tomball market area, and Wiesner earned his commission when Appellants either agreed to a contract to purchase property in the market area or breached the BRA. The BRA provides that Wiesner's commission is "payable" upon Appellants' breach.

2

Realty Partners alleged that during the active term of the BRA, Appellants breached the BRA by working with Jodi Rutledge, a separate broker who helped Appellants purchase property on Alpine Mountain Lane in Tomball, Texas (the "Property"). According to Realty Partners, Wiesner's $11,280 commission was immediately earned and payable upon Appellants' breach but based on Waldon's instruction the seller of the Property refused to pay. Realty Partners also alleged the BRA entitled Wiesner to a $5,000 bonus that the seller of the property offered to the selling agent. Realty Partners sought the same damages in its alternative suit for promissory estoppel to enforce Appellants' promise to utilize Wiesner to purchase a home, a promise which Realty Partners claimed it reasonably and substantially relied on to its detriment.

Appellants filed an Original Answer generally denying Realty Partners' claims and asserting affirmative defenses. Appellants also filed an Original Counterclaim against Realty Partners and a Third-Party Claim against Wiesner alleging causes of action for common law fraud, fraud by nondisclosure, fraud by misrepresentation, breach of contract and requesting declaratory relief under Chapter 37 of the Texas Civil Practice and Remedies Code. Appellants alleged Wiesner falsely represented that they had to sign the BRA to submit an offer on the Midland Creek home, the BRA only applied to the Midland Creek home, and the BRA would not interfere with Rutledge being their buyer's representative. Appellants alleged

3

that they relied on Wiesner's false representations when they executed the BRA, and Realty Partners had no intent to limit the BRA to the Midland Creek home or to not interfere with Rutledge's representation. Appellants further alleged that Realty Partners concealed and/or failed to disclose material facts related to the scope of the BRA and their obligations under the BRA.

According to Appellants, after their offer on the Midland Creek home was rejected in October 2016, Wiesner did not assist them in finding another home or inform them the BRA was still in effect. Appellants alleged that in December 2016, after Rutledge assisted them in finding the Property, Wiesner falsely represented to Towery that he would not pursue a commission on the Property. Appellants further alleged that Wiesner fraudulently lied to the sellers of the Property when he told the sellers he was affiliated with Rutledge and entitled to the commission. In their claim for breach of contract, Appellants argued that they had an oral contract with Wiesner to only use him as their buyer's agent on the Midland Creek home, they never agreed to modify their oral contract with the BRA, and Wiesner did not use his best efforts in making an offer on a second home on Midland Creek that Appellants refer to as their dream home. Appellants alleged that Realty Partners breached its fiduciary duty by failing to properly train and supervise Wiesner, and if Wiesner had used his best efforts, they could have purchased their dream home. According to Appellants, Wiesner's breach caused them actual damages for the loss of their opportunity to

4

purchase their dream home; actual damages for mental anguish foreseeable due to Realty Partners' breach of fiduciary duty and public embarrassment; economic injury for costs, lost time from work to pursue their legal defense, and lost profits; and attorney's fees. Appellants also asked the trial court to issue a declaratory judgment stating they have no obligations to Realty Partners or Wiesner under the BRA.

Counter-Defendant Realty Partners filed an Original Answer and Affirmative Defenses and a No-Evidence Motion for Summary Judgment on Appellants' counterclaims for common law fraud, fraud by non-disclosure, fraud by misrepresentation, and breach of contract. In its No-Evidence Motion, Realty Partners argued there is no evidence to support Appellants' claims for fraud or fraud by misrepresentation, because Appellants failed to show Realty Partners or Wiesner: (1) falsely represented any facts; (2) knew any representations were false; (3) represented any facts falsely without knowledge of their truth; (4) intended to induce Appellants to act upon any representations of any false facts; or that Appellants (5) actually and justifiably relied upon any representations that were false; or (6) suffered any injuries caused by any allegedly false representations.

Realty Partners further argued that no evidence supports Appellants' fraud by nondisclosure claim, because no evidence in the trial proves: (1) Realty Partners or Wiesner failed to disclose material facts; (2) Realty Partners or Wiesner had a duty

to disclose facts that were not disclosed; (3) Appellants were ignorant of facts that were not disclosed and did not have an equal opportunity to discover such facts; (4) Realty Partners or Wiesner intended for Appellants to act or refrain from acting on any facts they did not discover; and (5) Appellants relied on facts that were allegedly not disclosed or suffered any injury resulting from the alleged nondisclosure. Realty Partners also argued that there is no evidence to support Appellants' breach of contract claim, because Appellants failed to prove: (1) they entered into an oral contract with Realty Partners or Wiesner that created duties; (2) Realty Partners or Wiesner breached or repudiated any oral contract; (3) Realty Partners breached the BRA; or (4) Appellants were harmed by the alleged breach.

In their response to Realty Partners' No-Evidence Motion, Appellants argued, among other things, that they had sufficient evidence to raise fact issues on their counterclaims. According to Appellants, Wiesner committed fraud by making a material representation that the BRA only applied to the Midland Creek home, the representation was false, Wiesner knew the representation was false, Wiesner made the false representation to induce Appellants to sign the BRA, Appellants relied on the false representation, and Appellants suffered injury when Realty Partners filed suit, subjecting Appellants to pay a commission Wiesner never earned. Concerning their claim for fraud by nondisclosure, Appellants argued that Wiesner failed to disclose material facts about the scope of the BRA; Appellants were ignorant of

6

those facts and did not have an equal opportunity to discover them; Wiesner failed to disclose the actual meaning of the BRA while intending to have the Appellants sign it so that Wiesner could unjustly claim a commission he did not rightly earn; and Appellants relied on the nondisclosure, resulting in actual damages for mental anguish that were foreseeable due to Realty Partners' breach of fiduciary duty, which caused Appellants public embarrassment, economic damages for costs and lost time from work to defend the suit, lost profits, litigation costs, and attorney's fees.

Appellants also argued they presented sufficient evidence to support their breach of contract claim. According to Appellants, they entered into a valid and enforceable oral contract with Wiesner, which included using Realty Partners as their one-time buyer's agent for only their offer on the Midland Creek home and for Wiesner to use his best efforts to assist them in acquiring that home. Appellants maintained that they complied with the terms of the oral contract, and when the seller rejected their offer, the oral contract was no longer in effect. However, according to Appellants, Wiesner had them sign the BRA, which was contrary to their alleged prior oral contract. Regardless of the unambiguous terms of the BRA, Appellants alleged that the BRA was void and/or voidable due to Realty Partners' intentional misrepresentation. Appellants argued that Wiesner breached his fiduciary duty by tricking them into signing the BRA due to his false representation that the BRA comported with their oral agreement and by failing to make an offer on their dream

home, and Realty Partners breached its fiduciary duty by failing to properly train and supervise Wiesner. Appellants further argued that they were excused from performing their contractual obligations under the BRA because they never agreed to Wiesner's fraudulent modification of their oral agreement and because Wiesner failed to use best efforts to assist them in acquiring the Midland Creek home. According to Appellants, Realty Partners breached their oral agreement resulting in Appellants' actual damages for mental anguish due to Realty Partners' breach of fiduciary duty and public embarrassment; economic damages for costs and lost time from work to pursue their legal defense, lost profits, and litigation costs; and attorney's fees to defend the suit.

In support of their contention that they presented sufficient evidence to raise fact issues on their counterclaims, Appellants presented the affidavits of Towery, Waldon, and Towery's daughter, Natalie Strole, along with several text messages and emails exchanged between Towery and Wiesner. In her affidavit, Towery explained that in August 2016, she had Wiesner list her home in Conroe, Texas, and Towery planned to use the proceeds from the sale to purchase a home in Tomball, Texas, with Waldon, Strole's fiancé. Towery stated that Rutledge, who was Waldon's real estate agent, sold Waldon's home and helped them search for a home in the Tomball area. According to Towery, Waldon and Strole told Wiesner that Rutledge was their real estate agent and that they planned to use Rutledge for any

8

properties she showed them. Towery explained that she asked Wiesner to show her two homes on Midland Creek, and Waldon told Wiesner that Rutledge would not be involved in any offers on those specific homes. Towery stated that after Wiesner repeatedly discouraged them from putting an offer on their dream home, Wiesner made an offer on the Midland Creek home and fraudulently attached the BRA to the contract. According to Towery, Wiesner knew that Rutledge was their agent and that they did not want to sign the BRA, but Wiesner told them not to worry because the BRA only applied to the offer on the Midland Creek Home and would not interfere with the agreement they made with Rutledge. Towery explained that after the sellers refused their offer on the Midland Creek home, she and Waldon decided to use Rutledge exclusively as their buyer's agent because Wiesner failed to use his best efforts to find them a home.

Towery stated that on December 19, 2016, she told Wiesner they were purchasing the Property, and Wiesner told her that he would not pursue a commission. According to Towery, after Wiesner unsuccessfully tried to get the seller of the Property to pay him the commission, Wiesner apologized and told her that he had quit trying to obtain the commission, but Realty Partners' attorney sent her a letter asserting she was responsible to pay them the commission on the Midland Creek home in compliance with the BRA and then filed suit.

9

In Waldon's affidavit, Waldon explained that after he and Towery agreed to purchase a home in Tomball, Towery asked Wiesner to show them the homes on Midland Creek. Waldon stated that he told Wiesner that Rutledge was his real estate agent, and Wiesner indicated that his involvement would not impact any past or further agreements with Rutledge. Waldon explained he asked Rutledge to put an offer on their dream home after Wiesner failed to do so, but Rutledge refused because Wiesner had shown the property. According to Waldon, he and Towery signed the BRA after Wiesner included it with the earnest money contract for the Midland Creek home, because Wiesner represented that the BRA only covered the one-time submission for the Midland Creek home. Waldon stated that the sellers rejected their offer on the Midland Creek home, and in December 2016, Rutledge assisted them in purchasing the Property, and based on Wiesner's representations, Waldon did not believe the BRA applied to the Property. Waldon stated Wiesner tried to obtain the commission on the Property, and when he failed to do so, Realty Partners filed suit against him.

In Strole's affidavit, she averred that Towery entered into a listing agreement with Wiesner to sell her Conroe Property, and Towery had Wiesner show them the homes on Midland Creek. Strole explained that she and Waldon told Wiesner that Rutledge was their purchasing agent. Strole also explained that Wiesner made an offer on the Midland Creek home, attached the BRA to the Earnest Money Contract,

10

and told Waldon that the BRA only applied to the Midland Creek home. According to Strole, Waldon and Towery discussed the terms of the BRA before they signed it, and after they signed the BRA, Wiesner did not show them any other homes. Strole stated that Wiesner was not putting his best efforts into finding them a home, and when Rutledge helped them purchase the Property, Wiesner tried to take her commission despite having no interest in the transaction.

The trial court granted Realty Partners' No-Evidence Motion for Summary Judgment and ordered that Appellants take nothing on their counterclaims. Prior to trial, Realty Partners filed a motion to exclude Rutledge as Appellants' expert regarding real estate sales on the basis that Rutledge is not qualified to provide an expert opinion. Realty Partners argued that while Appellants identified Rutledge in their Second Responses to Request for Disclosures filed on May 15, 2019, they failed to provide Rutledge's mental impressions and opinions, a brief summary of the basis of Rutledge's opinions, or the documents that Rutledge reviewed and relied upon in forming her opinions. Realty Partners also complained that Appellants failed to provide a resume, bibliography, or any other documentation demonstrating Rutledge's qualifications as required by Rule 702 of the Texas Rules of Evidence.

In their response, Appellants argued that Realty Partners never requested additional information regarding Rutledge's opinions or qualifications, and Realty Partners' motion was untimely because it forwarded the motion on July 24, 2019,

11

and Appellants' attorney had a vacation letter on file since July 10, 2019, noticing that she would be in Europe beginning July 26, 2019. Appellants also complained that the motion was set to be heard while their attorney was on vacation. In response to Realty Partners' motion, Appellants filed their Third Responses to Request for Disclosures, providing additional information regarding the subject matter of Rutledge's expert testimony and included Rutledge's biography.

Realty Partners filed a Reply arguing that the docket control order's deadline for designating expert witnesses was June 7, 2019, the docket control order states that a Rule 194 disclosure is not a substitute for the filed designation, Appellants inadequately designated Rutledge in their Second Responses to Request for Disclosures, and Appellants never filed an expert designation. Realty Partners argued that an expert who had not been designated by the deadline imposed by a docket control order under Texas Rule of Civil Procedure 190.4 can be properly excluded under Texas Rule of Civil Procedure 193.6(a) absent evidence of good cause or lack of unfair surprise or prejudice, and Appellants failed to provide such evidence. The trial court granted Realty Partners' motion to exclude Rutledge's expert testimony. Appellants filed a Motion for Reconsideration, in which they argued that the docket control order provides that all challenges to expert witnesses must be set for a hearing to occur by July 24, 2019, and failure to obtain such a hearing is a waiver of any Rule 702 objection. According to Appellants, the hearing

was not timely held, Realty Partners was not surprised that Rutledge was an expert witness because she was listed as a fact witness, and good cause existed to allow Rutledge to testify as an expert. The trial court denied Appellants' Motion for Reconsideration due to Appellants' failure to timely designate Rutledge as an expert.

Appellants also filed a Motion for Partial Summary Judgment on Realty Partners' breach of contract claim and argued, among other things, that the summary judgment evidence shows Realty Partners breached the BRA by failing to use best efforts to assist Appellants in acquiring property in the Tomball area. In its response, Realty Partners argued that Appellants' motion does not contest the existence of the BRA, the BRA is unambiguous and binding, Appellants breached the BRA by using Rutledge to acquire a property in the Tomball market area during the BRA's active term, and Realty Partners fully performed and did not repudiate or cancel the BRA before Appellants' breach. Realty Partners further argued it raised a material issue of fact as to Wiesner's use of best efforts as required by the BRA. In their reply, Appellants contested the validity of the BRA because it was obtained by Wiesner's alleged fraudulent misrepresentation and argued Wiesner repudiated the BRA before any alleged breach by Appellants. The trial court denied Appellants' Motion for Partial Summary Judgment.

The trial court conducted a jury trial on Realty Partners' claims for breach of contract and promissory estoppel. The jury found that Appellants (1) agreed to the

13

BRA with Realty Partners, (2) failed to comply with the BRA, and (3) were not excused from complying with the BRA by Realty Partners' previous failure to comply with a material obligation of the BRA or by Realty Partners' prior repudiation of the BRA. The jury found that Realty Partners did not commit fraud against Appellants by making a misrepresentation, and Realty Partners was entitled to $11,280 in damages for the commission earned and payable resulting from Appellants' failure to comply with the BRA. The jury also found that Appellants promised to use Realty Partners to purchase a home, Realty Partners substantially relied on Appellants' promise to its detriment, Realty Partners' reliance was foreseeable to Appellants, and $5,000 would compensate Realty Partners for damages resulting from its reliance on Appellants' promise.

Realty Partners filed a Motion to Disregard Certain Jury Findings, in which Realty Partners explained that it sued for breach of contract and promissory estoppel seeking liquidated damages of $16,280, and the jury awarded $11,280 in damages for breach of contract and $5,000 in damages for its promissory estoppel claim. Realty Partners argued that the evidence conclusively established $16,280 in damages, and the two damage questions in the charge of the court should be disregarded and the trial court should substitute a finding of $16,280 to conform the judgment to the pleadings and evidence presented at trial. In their response, Appellants agreed that the trial court should disregard the jury's award of $5,000 in

14

damages for Realty Partners' promissory estoppel claim and substitute an award of $0 damages, because there was no evidence showing Realty Partners relied upon any promise Appellants made to its determent.

The trial court conducted a hearing on Realty Partners' Motion to Disregard Certain Jury Findings, during which Realty Partners argued that in addition to a commission, the BRA allowed for the recovery of additional compensation provided by the seller, which would include the $5,000 bonus the jury awarded for its promissory estoppel claim. The trial court explained that since the damages were conclusively established by the evidence, the trial court could disregard the jury's findings and render judgment based on the correct amount from the evidence admitted in the trial. The trial court also explained that promissory estoppel damages do not apply when the parties have a contract. However, since the contract provided that additional moneys could be included in the definition of commission, the trial court would change the jury's award for breach of contract to $16,280.

Realty Partners filed a Motion for Judgment on the Verdict, Subject to its Motion to Disregard Certain Jury Findings, requesting the trial court to render a judgment for $16,280. The trial court rendered a final judgment granting Realty Partners' Motion for Judgment on the Verdict and ordered that Realty Partners recover a judgment for $16,280 in actual damages. Appellants filed a Motion for New Trial, which was overruled by operation of law.

15

ANALYSIS

NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

In issue one, Appellants complain the trial court erred in granting Realty Partner's No-Evidence Motion for Summary Judgment on their counterclaims of common law fraud, fraud by nondisclosure, fraud by misrepresentation, breach of contract, and for a declaratory judgment.[1] Realty Partners argues that Appellants failed to establish facts to support all the elements of each of their causes of action and had either failed to prove damages or claimed damages that were not recoverable, including damages for attorney's fees and expenses to defend against Realty Partners' suit.

We review summary judgment orders *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a no-evidence motion, we must view the evidence in the light most favorable to the non-movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). The Texas Supreme Court has explained that the trial court must grant a no-evidence motion if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law

---

[1]We note that Appellants' Motion for Partial Summary Judgment addressed the issue of whether the BRA was still in effect; however, in their reply, Appellants contested the validity of the BRA because it was obtained by Wiesner's alleged fraudulent misrepresentation and Wiesner repudiated the BRA before any alleged breach by Appellants. Since the trial court denied Appellants' Motion for Partial Summary Judgment, Appellants' claim for declaratory relief based on them not having any obligations under the BRA is moot and not the subject of this appeal.

or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively established the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Because a trial court's decision granting a no-evidence motion for summary judgment is essentially a pretrial directed verdict, the same legal sufficiency standard is used in reviewing rulings made by trial courts on motions for directed verdicts. *Id.* at 750-51. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ridgway*, 135 S.W.3d at 600. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). We first address whether there is more than a scintilla of evidence to support Appellants' counterclaims for common law fraud, fraud by misrepresentation, and fraud by nondisclosure. *See* Tex. R. Civ. P. 166a(i).

FRAUD CLAIMS

For their claims for common law fraud and fraud by misrepresentation, Appellants needed to prove that Wiesner (1) made a material representation that was false, (2) knew the representation was false, (3) intended to induce Appellants to act on the misrepresentation, and that (4) Appellants relied on the representation and

thereby suffered an injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). A misrepresentation is material if "'a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.'" *Id.* (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas, no pet.). Texas law recognizes two measures of damages for fraud, which include the out-of-pocket measure and the benefit-of-the-bargain measure. *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (citation omitted). Out-of-pocket damages are measured by the difference between the value as represented and the value received, which allows recovery based on the actual injury suffered. *Id.* (citation omitted). Benefit-of-the-bargain damages allow the injured party to recover profits that would have been made had the bargain been performed as promised. *Id.* (citation omitted).

Appellants alleged that Wiesner's false representation caused them injury by subjecting them to Realty Partners' lawsuit for failing to pay Wiesner a commission, and Appellants argued that their injury entitled them to exemplary damages under section 41.003(a) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). Appellants also alleged actual damages for mental anguish, in addition to out-of-pocket expenses to pursue their defense, lost profits, attorney's fees and costs to defend the suit.

Regarding their counterclaim for fraud by nondisclosure, Appellants must prove (1) a deliberate failure to disclose material facts; (2) by one who had a duty to disclose such facts; (3) to another who was ignorant of the facts and did not have an equal opportunity to discover them; (4) with the intent the listener acted or refrained from acting; and (5) the listener relied on the nondisclosure resulting in injury. *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.). Fraud by nondisclosure includes the elements of justifiable reliance and damage. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 506 (Tex. App.—San Antonio 2013, pet. denied). Appellants alleged that Wiesner's nondisclosure caused them actual damages for mental anguish, out-of-pocket expenses to pursue their defense, lost profits, attorney's fees, and costs to defend the suit. Appellants also argued that their injury entitled them to exemplary damages. In support of their contention that they presented sufficient evidence to raise fact issues on their counterclaims for fraud, Appellants presented the affidavits of Towery, Waldon, and Strole.

To defeat summary judgment on each of their alleged causes of action for fraud, Appellants were required to submit summary judgment proof that they suffered damages caused by Realty Partners' conduct. *See Zorrilla* 469 S.W.3d at 153; *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337; *Wise*, 436 S.W.3d at 409; *Zaffirini*, 419 S.W.3d at 506. Attorney's fees are not recoverable for fraud claims. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Generally,

19

attorney's fees are not recoverable as damages in and of themselves, and a party cannot recover attorney's fees for defending a lawsuit unless specifically provided by a contract or statute. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009); *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81-82 (Tex. 2003). Litigation expenses, such as value of lost time due to litigation, are also generally not recoverable unless expressly authorized by statute or contract or recoverable under equitable principles. *Eberts v. Businesspeople Pers. Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App.—1981, no writ). Appellants failed to identity any statute or contract that provides for the recovery of attorney's fees or litigation expenses for their fraud claims.

To recover mental anguish damages, Appellants must provide "direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine." *Chambers v. Starr*, 626 S.W.3d 57, 64 (Tex. App.—El Paso 2021, no pet.) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). Appellants must prove both the existence of compensable mental anguish and the amount of actual damages stemming from their injury. *See id.* Appellants failed to offer any evidence showing they suffered a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *See id.* Appellants also failed to offer evidence showing that Wiesner or Realty Partners acted with malice or that their

conduct was so outrageous or morally culpable as to make them liable for exemplary damages. *See* Tex. Civ. Prac. & Rem. Code. Ann. § 41.003(a); *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 229-30 (Tex. 2019); *Fletcher v. Edwards*, 26 S.W.3d 66, 79 (Tex. App.—Waco 2000, pet. denied).

To recover lost profits or benefit-of-the-bargain damages, Appellants had to prove the amount of profits that would have been made had the bargain been performed as promised. *See Zorrilla*, 469 S.W.3d at 153. Lost profit damages are measured by the difference between the value as represented and the value received. *Id.* Based on our review of Appellants' summary judgment evidence, Appellants failed to offer any evidence of lost profit damages. *See id.* We conclude that Appellants failed to produce more than a scintilla of evidence on the challenged element of damages for their claims for common-law fraud, fraud by misrepresentation, and fraud by nondisclosure.

BREACH OF CONTRACT CLAIM

To prevail on a claim for breach of contract, the plaintiff must prove (1) a valid contract existed between the parties; (2) the plaintiff performed or offered to perform the contract; (3) the defendant breached the agreement; and (4) the plaintiff was damaged by the breach. *Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 104 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In a breach of contract case, the normal measure of damages is the benefit of the bargain, the purpose of which is to

restore the injured party to the economic position he would have been in had the contract been performed. *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To restore an injured party to the position he would have been in, it must be determined what additions to wealth have been prevented by the breach and what subtractions from wealth have been caused by the breach. *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148-49 (Tex. App.—Dallas 2012, no pet.). Under the benefit-of-the-bargain measure, the plaintiff may recover lost profits on the bargain if they are proved through competent evidence with reasonable certainty, and at a minimum, opinions or estimates of lost profits must be based on objective facts or figures from which the amount of lost profits can be ascertained. *Id.* at 148-49. A plaintiff may opt to forego his lost profits, and seek reliance damages to recover out-of-pocket expenses, which reimburses the plaintiff for expenditures made toward the execution of the contract to restore the statute quo. *Id.* at 149 (citation omitted).

In their counterclaim, Appellants alleged that Realty Partners' breach of the oral agreement caused them injury which resulted in actual damages for the loss of the opportunity to purchase their dream home, actual damages for mental anguish, in addition to out-of-pocket expenses to pursue their defense, lost profits, attorney's fees and costs to defend the suit. Since mental anguish damages are not recoverable under a breach of contract claim and having already concluded that Appellants failed

22

to provide evidence to prove damages for attorney's fees, litigation expenses, and exemplary damages, we only need to address whether Appellants proved that they suffered actual damages for the loss of the opportunity to purchase their dream home under the alleged oral contract or lost profits. *See Latham v. Castillo*, 972 S.W.2d 66, 71 (Tex. 1998).

In their response to Realty Partners' no-evidence motion and in their brief, Appellants contend that the oral contract only pertained to the single offer on the Midland Creek home and became moot when the sale failed. Appellants alternatively argue that had the oral contract not been limited to the Midland Creek home, Realty Partners breached the oral contract by failing to make an offer on their dream home. Since Appellants claimed that the alleged oral contract only applied to the Midland Creek home, Appellants have failed to prove not only how any measure of damages regarding the lost opportunity to purchase their dream home falls under the alleged oral contract, but also failed to provide competent evidence of the amount of any alleged damages regarding their lost opportunity. *See Sharifi*, 370 S.W.3d at 148-49; *Mays*, 203 S.W.3d at 577.

Appellants alternatively alleged that Realty Partners and Wiesner breached the BRA by not using best efforts or Wiesner cancelled or repudiated the BRA, and Appellants sought liquidated damages of at least $100,000, to put them in the position they would have been in had they purchased their dream home. According

23

to Appellants, $100,000 was the cost to install their dream home's pool and amenities at the Property. The only evidence Appellants submitted to support their alleged lost profit damages were the affidavits of Towery, Waldon, and Strole, in which they averred that the Property lacked the amenities of their dream home, which had a beautifully landscaped swimming pool and a finished media room with a projector. Based on our review of the record, Appellants failed to prove through competent evidence with reasonable certainty that they were entitled to recover these types of alleged costs or lost profits. *See Sharifi*, 370 S.W.3d at 148-49. We conclude that Appellants failed to produce more than a scintilla of evidence on the challenged element of damages for their breach of contract claim.

Having concluded that Appellants failed to produce more than a scintilla of evidence on the challenged element of damages for their counterclaims, we further conclude that Realty Partners is entitled to summary judgment on its no-evidence motion against Appellants' claims for common-law fraud, fraud by nondisclosure, fraud by misrepresentation, and breach of contract. *See* Tex. R. Civ. P. 166a(i); *Ridgway*, 135 S.W.3d at 600; *Chapman*, 118 S.W.3d at 751. Since the trial court did not err by granting Realty Partners' No-Evidence Motion for Summary Judgment and dismissing Appellants' counterclaims, we need not consider Appellants' fourth issue, in which Appellants complain the trial court erred by excluding evidence

24

related to their counterclaims. *See* Tex. R. App. P. 47.1. We overrule issues one and four.

EXLCUSION OF EVIDENCE AT TRIAL

In issue two, Appellants argue that the trial court erred during trial by excluding evidence that Wiesner did not use best efforts and was inept in assisting Appellants. According to Appellants, the trial court denied them the opportunity to bring forth evidence of their alternative claim that Realty Partners failed to use best efforts in carrying out its duties under the BRA. In support of their argument, Appellants cite portions of Waldon's testimony and parts in the affidavits of Towery and Strole.

Realty Partners contends that Appellants did not preserve this issue for appeal because they failed to make an offer of proof or bill of exception about the evidence the trial court excluded that Appellants believed relevant to proving whether Realty Partners used best efforts. Realty Partners argues that even if Appellants had preserved their complaint, the trial court did not err by excluding improper expert testimony from fact witnesses addressing the "best efforts" professional standard of care that applies to real estate agents. Realty Partners further argues that the trial court did not err by excluding evidence concerning Appellants' counterclaims because those claims were dismissed on summary judgment.

25

Appellate courts review complaints about rulings excluding evidence using an abuse of discretion standard of review. *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). We will not disturb a trial court's ruling if it is correct on any legal theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Tex. R. Evid. 401. Relevant evidence is generally admissible. Tex. R. Evid. 402. Under Rule 403 of the Texas Rules of Evidence, a "court my exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

The record shows that on the first day of trial, after explaining that it had excluded Rutledge's expert testimony because she was not designated within the period required to designate experts based on the trial court's docket control order,

the trial court heard arguments concerning Realty Partners' Motion in Limine. Realty Partners argued that testimony about Wiesner's failure to lock up a property or concerns about Wiesner leaving Appellants alone at a property was prejudicial and irrelevant to the issue of whether there was a signed contract requiring Appellants to pay Realty Partners a real estate commission in a period when they used a different realtor to purchase a home. The trial court granted Realty Partners' request and excluded any testimony about Wiesner's behavior mentioned above, but the trial court also indicated that it was willing to revisit the matter.

During Waldon's testimony, Realty Partners objected when it anticipated that Waldon was about to violate the Motion in Limine. Realty Partners also objected to Waldon testifying about facts regarding Wiesner's using his best efforts because the testimony was immaterial and prejudicial since Appellants could not call an expert witness to testify about the standard of care that applied to a real estate agent's use of best efforts. According to Realty Partners, questions about best efforts could be addressed by a motion for directed verdict because no competent evidence was before the jury for the jury to determine whether Realty Partners breached a standard that involved using best efforts. In response, Appellants argued that even if best efforts involved a standard of care, the jury could determine what conduct is reasonable. The trial court sustained Realty Partners' objection, thereby preventing

27

Waldon from testifying about Wiesner's failure to lock up a property or his concerns as they relate to Wiesner's decision to leave Appellants alone at a property.

Appellants also complain that the trial court should have allowed Towery and Strole to testify about Wiesner's alleged incompetence, but they did not point to any place in the record where the trial court prevented Towery and Strole from doing so. We note that during Strole's testimony, Strole's counsel asked Strole about her impression of Wiesner, and Realty Partners objected, asserting the testimony was not relevant because Strole was not a party to the BRA. When the trial court asked Strole's counsel about why Strole's impressions would be relevant, Strole's counsel explained that it was to determine whether Wiesner "measured up to whatever her standards were for a real estate agent." The trial court sustained Realty Partners' objection. While we have carefully examined the record, we have not found any instances where the trial court prevented Towery from presenting testimony about Wiesner's best efforts.

Based on the record before us, the trial court could have reasonably concluded that testimony addressing Wiesner's failure to lock up a property, Wiesner's decision to leave Appellants alone at a property, and Strole's impression about Wiesner was all irrelevant, because without expert testimony addressing the standard of care related to a real estate agent's best efforts, testimony about Wiesner's using his best

28

efforts would not tend to make a fact of consequence more or less probable than it would be without the evidence.

We conclude the trial court did not abuse its discretion by excluding the challenged evidence. *See JBS Carriers, Inc.*, 564 S.W.3d at 836; *see also* Tex. R. Evid. 401. Even assuming without deciding that the trial court may have erred in excluding the challenged evidence, after examining the record as a whole, we have fair assurance that the error, if any, did not cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). We overrule issue two.

JURY CHARGE

In issue three, Appellants complain the trial court erred in submitting a jury charge that did not include language on their defensive issue of excuse, as to Wiesner's failure to use "best efforts." More specifically, Question 3-A 1. of the court's charge dealing with Appellants' defensive issue of excuse set forth: "Failure to comply by that party is excused by: Realty Partners, Inc.'s d/b/a Century 21 Realty Partners previous failure to comply with a material obligation of the same agreement." However, during the charge conference, Appellants objected that "best efforts" was not included where it should have read "'… failure to comply with a material obligation or best efforts of the same agreement[,]'" which was overruled by the trial court. Again, the trial court explained that there was not sufficient

29

evidence for the jury to make any determination about whether Wiesner used "best efforts" regarding his representation of Appellants, because the issue required expert testimony.

Rule 278 of the Rules of Civil Procedure provides that "[a] judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question." Tex. R. Civ. P. 278. Rule 278 also provides that the failure to submit a question shall not be deemed a ground for reversal unless its submission, in substantially correct wording, has been requested in writing. *Id.* Realty Partners argues that Appellants failed to preserve error because they did not submit their request in writing; "however, that objection to such failure shall suffice in such respect if the question is one relied upon by the opposing party." *Id.* Rule 277 of the Rules of Civil Procedure provides that "[i]n all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." Tex. R. Civ. P. 277. The record shows that the trial court in Question 3-A incorporated Appellants' excuse defense question, Realty Partners' material breach instruction and Realty Partners' anticipatory repudiation instruction in substantially correct form pursuant to Contracts 101.21, 101.22 and 101.23 of the Texas Pattern Jury Charges. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Assoc.*, 710 S.W.2d 551, 554-55 (Tex. 1986); Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury*

*Charges: Business, Consumer, Insurance & Employment* PJC 101.21, 101.22, 101.23 (2020). Therefore, we overrule issue three.

## MOTION TO DISREGARD JURY FINDINGS

In issue five, Appellants complain the trial court erred by disregarding the jury findings and signing a judgment that contains damages based, in part, on two separate causes of action and their accompanying awards. According to Appellants, the trial court improperly included both promissory estoppel damages and breach of contract damages in its award even though Realty Partners is not entitled to any award on its promissory estoppel claim.

The trial court conducted a hearing on Realty Partners' Motion to Disregard Certain Jury Findings. During the hearing, Realty Partners argued that the BRA, in addition to a real estate commission, allowed Realty Partners to recover damages that include the $5,000 bonus the jury included as damages on the promissory estoppel claim. The trial court explained that since the damages were conclusively established by the evidence, the trial court could disregard the jury's findings and render judgment based on the correct amount from the evidence admitted at trial. The trial court also explained that a recovery in promissory estoppel is not available when the parties have a contract. However, this issue concerns interpreting the contract, and the damages recoverable under the contract are matters defined by the contract. The trial court concluded that the evidence conclusively established

31

damages of $16,280; and therefore, Realty Partners was entitled to recover $16,280 from Appellants. Based on that conclusion, the trial court signed a final judgment granting Realty Partners' Motion for Judgment on the Verdict, ordering Realty Partners to recover $16,280 from Appellants in actual damages.

In some circumstances, a trial court may disregard a jury's findings and substitute its judgment for the jury's damages. *Galvan v. Garcia*, 502 S.W.3d 382, 386 (Tex. App.—San Antonio 2016, no pet.). A trial court may substitute its judgment regarding damages only if the evidence conclusively proves the damages sought by the movant. *Id.* (citing *Ginn v. NCI Building Sys., Inc.*, 472 S.W.3d 802, 844 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). "Evidence is conclusive only if reasonable people could not differ in their conclusions . . ." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

During the trial, the evidence established that the BRA provided that the broker may obtain additional compensation in addition to the specified commission, including marketing incentives and bonuses. Accordingly, the evidence established that the seller of the Property provided additional compensation, which was a $5,000 bonus the builder provided as an incentive for agents to show the Property. Wiesner would have received the $5,000 bonus if he had been involved in the transaction, and Realty Partners was seeking to obtain that amount in the lawsuit. Wiesner testified that, including the three percent commission of $11,280 and the $5,000

32

bonus to the selling agent, he would have received a total commission of $16,280 on the sale of the Property.

While promissory estoppel may be the basis for an affirmative claim, a plaintiff can only recover reliance damages measured by the detriment sustained. *Bechtel Corp. v. CITGO Products Pipeline Co.*, 271 S.W.3d 898, 926-27 (Tex. App.—Austin 2008, no pet.) (citation omitted). Reliance damages compensate a plaintiff for out-of-pocket expenses made toward the execution of the contract in order to restore the statute quo before the contract. *Id.* (citations omitted). Reliance damages are distinguishable from expectancy damages, such as lost profits, which are not recoverable based on promissory estoppel. *Id.* (citations omitted). For its promissory estoppel reliance damages, Realty Partners obtained a jury award for $5,000, which was not an amount to compensate it for a loss it had already suffered. *See id.* Rather the $5,000 award was for a profit that Realty Partners and Wiesner expected to obtain had Appellants complied with the BRA and used Wiesner to purchase the Property. Thus, the $5,000 bonus under the BRA is not evidence of reliance damages that can support recovery under Realty Partners' promissory estoppel theory. *Id.* Based on our review of the record, Realty Partners did not present any evidence of reliance damages.

Here, the trial court did not add the promissory estoppel damage award into the breach of contract damage award as Appellants contend; rather, the trial court

added the $5,000 bonus the builder provided as an incentive for agents to show the Property to Realty Partners' breach of contract damage award, because the evidence exclusively established that the BRA specifically provided that a broker may obtain marketing incentives and bonuses. Since the record conclusively establishes the amount of damages that should be awarded for breach of contract, the trial court did not err in substituting its judgment and awarding Realty Partners damages of $16,280 for breach of contract. *See City of Keller*, 168 S.W.3d at 816; *Galvan*, 502 S.W.3d at 386; *Ginn*, 472 S.W.3d at 844. We overrule issue five. Having addressed each of Appellants' issues, we affirm the trial court's order granting Realty Partners' No-Evidence Motion for Summary Judgment and the trial court's judgment awarding Realty Partners $16,280 in damages.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on November 18, 2021
Opinion Delivered March 17, 2022

Before Golemon, C.J., Horton and Johnson, JJ.